**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Lawrence TRIPPETT, Appellant.**

Superior Court of Pennsylvania.

Argued May 3, 2007.

Filed Aug. 24, 2007.

Charles A. Klein, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., for Com., appellee.

BEFORE: TODD, J., McEWEN, P.J.E., and JOHNSON, J.

OPINION BY JOHNSON, J.:

¶ 1 Lawrence Trippett appeals from the judgment of sentence entered following his convictions of Involuntary Deviate Sexual Intercourse (IDSI), Endangering Welfare of Children, and Corruption of Minors. *See* 18 Pa.C.S. §§ 3123(b), 4304, 6301(a) (respectively). Trippett contends that the evidence was insufficient to support the verdict and that the verdict was against the weight of the evidence. Trippett also contends that his Sixth Amendment right to a speedy trial was violated because he was not arrested until over nine years after the incidents occurred. Trippett further contends that the charges should have been dismissed because the Commonwealth failed to bring the charges to trial within the requisite 365 days prescribed by Pennsylvania Rule of Criminal Procedure 600. Trippett contends that the trial court abused its discretion in denying his motion *in limine* which sought to exclude evidence of his prior *crimen falsi* convictions which was to be used to impeach his testimony. Trippett also contends that the trial court's jury instructions were prejudicial. Finally, Trippett challenges the discretionary aspects of sentencing by arguing that his sentence was excessive. After study, we find no merit in any of Trippett's contentions. Accordingly, we affirm the judgment of sentence.

¶ 2 The trial court set forth the relevant underlying facts:

The facts underlying the instant case concern three separate incidents that occurred during 1992 or 1993 around 5539 Chester Avenue and 5504 Greenway Avenue in the City and County of Philadelphia. The complainant, [T.T.], was around [seven] to nine years old when the events took place. After her mother's death, [T.T.] lived with her paternal grandmother. The defendant also lived in the same household.

[T.T.] stated that while living with her paternal grandmother, the defendant would occasionally take care of her when no other adults were around. She testified that on one occasion, while at 5539 Chester Avenue, the defendant stood in front of her naked, applied lotion to his legs, and asked, "Did you get a good peak?" According to [T.T.], the entire incident lasted about five minutes.

The next incident occurred around the summertime when [T.T.] resided at 5504 Greenway Avenue. [T.T.] testified that as she entered the bathroom, the defendant followed her inside. While both parties were inside the bathroom together, the defendant told [T.T.], who was against the door, that he was going to do something to her. He then knelt down, placed his tongue on [T.T.'s] vagina, and performed oral sex on her. Afterwards, the defendant leaned against the door and compelled [T.T.], against her will, to kneel down and perform oral sex on him. [T.T.] stated that the third incident involved the defendant "French kissing" her in her mouth while in the basement.

When [T.T.] was about sixteen years old, she revealed details of the incidents to her aunt, Louise Trippett. Around February of 2002, when [T.T.] was about seventeen or eighteen years old, she also told a Department of Human Services worker that when she was about seven to nine years old, the defendant performed oral sex on her and that she performed oral sex on the defendant. [On November 2, 2002, the Commonwealth filed a criminal complaint against defendant charging him with multiple offenses including IDSI, endangering the welfare of a child, and corruption of a minor.] Subsequently, a police investigation ensued and attempts to locate the defendant were done. Around [October] 2003, the defendant was finally apprehended and arrested.

Trial Court Opinion (T.C.O.), 8/30/05, at 1–2 (citations to notes of testimony omitted).

¶ 3 On November 18, 2003, the trial court held a preliminary hearing where the charges were bound for trial. Trippett's public defender withdrew from the case on January 14, 2004, citing a conflict of interest. The trial court appointed Trippett new counsel that same day. The case was listed to go to trial on February 11, 2004; however, the case was continued until June 28, 2004, because of the unavailability of a Commonwealth witness. On June 28, 2004, the case was continued until the next day due to the unavailability of the assigned judge, the Honorable Gwendolyn Bright. On June 29, 2004, the case was again continued for a day due to the judge's unavailability. On June 30, 2004, the case was continued until November 15, 2004, because the prosecutor, defense counsel, and the court were engaged in other trials.

¶ 4 On July 26, 2004, Trippett filed a motion to dismiss the charges under Pa. R.Crim.P. 600 and the Sixth Amendment right to a speedy trial. The Honorable Joan Brown denied the motion on October 7, 2004; however, Judge Brown granted Trippett release on nominal bail under Rule 600(e). On November 15, 2004, the prosecution and the defense were ready to

proceed, but Judge Bright was again unavailable because she was presiding over another trial. The prosecutor requested that the case be transferred to another judge; however, no judges were available. The case was re-listed for the following day. On November 16, 2004, Judge Bright was still hearing the other case. Judge Bright, seeking to keep the case, issued a continuance until May 16, 2005. The prosecutor specifically requested that the trial court extend the time available under Rule 600. The trial court docket indicates the trial court ruled the time from November 16, 2004, until May 16, 2005, excludable under Rule 600. On May 16, 2005, Judge Bright was again unavailable and the case was transferred to the Honorable Anthony J. DeFino.

¶ 5 On May 18, 2005, Trippett again filed a motion to dismiss the charges under Rule 600 and filed a motion *in limine* seeking to preclude the use of his prior convictions against him if he testified. Judge DeFino denied both of these motions. On May 19, 2005, a jury trial commenced. After hearing the evidence, the jury convicted Trippett of IDSI, endangering the welfare of a child, and corruption of a minor. Judge DeFino deferred sentencing until the pre-sentence report, a mental health evaluation, and a sexual offender assessment could be completed. On November 9, 2005, Judge DeFino imposed a sentence of five to ten years' imprisonment and a consecutive three years' probation for IDSI and a consecutive sentence of one to two years' imprisonment for endangering the welfare of a child. Judge DeFino did not impose a sentence for the corruption of a minor conviction. Trippett filed a post-sentence motion which the trial court denied on March 20, 2006.

¶ 6 Trippett now appeals, raising the following questions for our review:

1. Did not the lower court abuse its discretion by denying appellant's post-sentence motion requesting arrest of judgment where the evidence was insufficient to the convictions, where appellant established that he had been denied his right to a "speedy trial" and/or had denied his right to a "prompt trial" under Pa. R.Cr.P. [sic] 600(g)?

2. Did not the lower court abuse its discretion by denying appellant's post-sentence motion requesting the grant of a new trial, where appellant established that the verdicts were against the weight of the evidence, the lower court had erred in denying his motion *in limine* and had erred in its instructions to the jury?

3. Did not the lower court abuse its discretion by denying appellant's post-sentence motion requesting reconsideration of sentence, where appellant established that the sentence imposed was manifestly unreasonable and excessive, and otherwise violated the fundamental norms of the sentencing process?

Brief for Appellant at 3.

¶ 7 We initially note that in each of his first two questions, Trippett seeks relief on multiple different issues within each question. In his first question presented, Trippett contends that the trial court abused its discretion in refusing to grant his post-sentencing motion for three separate reasons. Trippett initially argues that the evidence was insufficient to support his IDSI conviction. Brief for Appellant at 7.

A sufficiency claim prompts us to determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offense beyond a reasonable doubt.

As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record. Instead, we review the totality of evidence offered at trial to determine if it lends adequate support to the verdict.

*Commonwealth v. Kinney,* 863 A.2d 581, 584 (Pa.Super.2004) (internal citation and quotation marks omitted).

¶ 8 Trippett's entire claim is premised on the credibility of the testimony of the victim, T.T. Brief for Appellant at 8. Trippett argues that T.T.'s testimony "was so inherently unreliable and unbelievable that the jury had no basis upon which to find [him] guilty." Brief for Appellant at 8. Trippett only cites to the notes of testimony and boilerplate case law to support his argument. Brief for Appellant at 8–11.

¶ 9 It is well-settled that our Court "cannot substitute its judgment for that of a jury on issues of credibility." *Commonwealth v. DeJesus,* 580 Pa. 303, 860 A.2d 102, 107 (2004). The jury is free to believe all, part, or none of the testimony presented. *See Commonwealth v. Brotherson,* 888 A.2d 901, 904 (Pa.Super.2005). Further, "[t]his Court has long-recognized that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant[.]" *Commonwealth v. Charlton,* 902 A.2d 554, 562 (Pa.Super.2006) (internal quotation marks omitted). Here, T.T. testified that Trippett placed his tongue in her vagina and performed oral sex on her. Notes of Testimony (N.T.), 5/19/06, at 74–75. T.T. also testified that Trippett forced her to place his penis in her mouth. N.T., 5/19/06, at 75. The jury found the testimony of T.T. believable and convicted Trippett of IDSI. This Court will not disturb this finding. As our Court cannot assess the credibility of witnesses and Trippett does not provide any other argument to support his assertion, we find no merit in

his sufficiency claim as to the IDSI conviction. *See Commonwealth v. Wilson,* 825 A.2d 710, 714 (Pa.Super.2003) (finding sufficient evidence of IDSI where there was oral contact between appellant's genitalia and victim's mouth); *Commonwealth v. Trimble,* 419 Pa.Super. 108, 615 A.2d 48, 50 (1992) (finding victim's testimony that appellant licked her vagina was sufficient to demonstrate IDSI).

¶ 10 Trippett also argues the evidence was insufficient to support his conviction of endangering the welfare of a child. Brief for Appellant at 11. Trippett argues that he "did not fit the class of persons encompassed by the statute as 'having a duty to care, protect or support' [T.T.]" Brief for Appellant at 11.

¶ 11 The Crimes Code defines Endangering Welfare of Children as follows:

**§ 4304. Endangering welfare of children**

**(a) Offense defined.—**

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S. § 4304(a)(1). In reviewing section 4304, we must be aware that the legislature attempted "to prohibit a broad range of conduct in order to safeguard the welfare and security of our children." *Commonwealth v. Brown,* 721 A.2d 1105, 1106 (Pa.Super.1998) (citation and internal quotation marks omitted). Further, "[t]he common sense of the community should be considered when interpreting the language of the statute." *Id.* at 1106–07.

¶ 12 Trippett argues that he did not violate the statute because he was not the parent or natural guardian of T.T. Brief for Appellant at 11. Trippett further argues that living in the same house as T.T. does not demonstrate that he ever had a duty of care. Brief for Appellant at 11. We find these assertions to be without merit. The plain language of the statute does not indicate a person need only be a parent or guardian of a child before they can be charged and convicted under section 4304. *See Commonwealth v. Fedorek,* 913 A.2d 893, 898 (Pa.Super.2006) (*en banc*) (reiterating that our Court must read the provisions of a statute according to its plain meaning where the language of the statute is clear and unambiguous). The language of the statute indicates that any "other person" who supervises the child is eligible to be charged and convicted under the statute. *See Brown,* 721 A.2d at 1107 ("In an age when nontraditional living arrangements are commonplace, it is hard to imagine that the common sense of the community would serve to eliminate adult persons residing with a noncustodial child from the scope of a statute protecting the physical and moral welfare of children."). Here, T.T. testified that Trippett took care of her when she was little and no other adults were in the home. N.T., 5/19/05, at 65–66. T.T. further testified to the abuses perpetrated by Trippett while they were alone in the house. N.T., 5/19/05, at 74–75, 119–21. Based upon this testimony, which was found believable by the fact-finder, we find that the evidence was sufficient to support Trippett's conviction of endangering a child. *See Brown,* 721 A.2d at 1108 (finding evidence sufficient to prove live-in boyfriend was a person supervising child where the boyfriend played with child, babysat child, and otherwise interacted with child). For these reasons, we find the evidence sufficient to support the convictions.

¶ 13 Trippett next argues that he was denied his constitutional right to a speedy trial under the Sixth Amendment of the Constitution of the United States. Brief for Appellant at 12. Trippett argues that he suffered prejudice as a result of the lapse of nine to eleven years from the occurrence of the incidents to the time he was arrested. Brief for Appellant at 13. Trippett argues that because of this lapse in time, he could not provide a proper alibi. Brief for Appellant at 13. Trippett further argues that the Commonwealth presented no reasonable justification for waiting almost seven months to file a complaint after finding out about T.T.'s allegations. Brief for Appellant at 14.

¶ 14 Trippett's reliance on the Sixth Amendment to prove his claim is misplaced. Indeed, it is well-settled that the

> [p]assage of time between crime and arrest is not a matter within the context of Sixth Amendment speedy trial rights. Only a formal indictment, information or arrest, any of which binds an accused to respond to a criminal charge, invokes Sixth Amendment privileges. Once a citizen's liberty is restrained, [his] speedy trial rights are activated.

*Commonwealth v. Akers,* 392 Pa.Super. 170, 572 A.2d 746, 758 (1990) (citation omitted); *see also United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971) (finding defendant's complaints of pre-trial delay did not implicate the Sixth Amendment right to a speedy trial as the protection did not apply until "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge[.]"). Here, Trippett was not charged until November 4, 2002, and was not apprehended until the following October. The Sixth Amendment right to a

speedy trial did not apply until Trippett was arrested on the charges. Therefore, the nine to eleven years prior to the arrest are irrelevant under the Sixth Amendment. Furthermore, Trippett does not indicate how he was prejudiced by the pretrial delay other than bald assertions that he could not remember where he was when the assault occurred and the Commonwealth waited seven months to file the complaint. Trippett does not provide any case law to support his argument. *See* Pa.R.A.P. 2119(a). As Trippett relies upon the Sixth Amendment and he has not demonstrated how he was prejudiced by the pre-trial delay, we find no merit in his argument.

¶ 15 Trippett also argues that the Commonwealth violated Pa.R.Crim.P. 600 by waiting over 365 days from the date the complaint was filed to commence the trial. Brief for Appellant at 15. Trippett argues that since the Commonwealth filed its complaint on November 4, 2002, the mechanical run date was on November 4, 2003. Brief for Appellant at 15. Trippett further argues that although the judge assigned to his case was busy, the Commonwealth did not exercise due diligence in having the case tried before another judge before the run date expired. Brief for Appellant at 15. Trippett concludes that the trial court abused its discretion in finding that the Commonwealth did not violate Rule 600. Brief for Appellant at 18. We disagree.

¶ 16 "In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Jones*, 886 A.2d 689, 698–99 (Pa.Super.2005) (quoting *Commonwealth v. Hunt*, 858 A.2d 1234, 1238 (Pa.Super.2004) (*en banc*)). "Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consider-

ation." *Hunt*, 858 A.2d at 1238 (citation omitted). "Accordingly, in reaching our determination, we consider whether the evidence adduced at the Rule 600 hearing, viewed in the light most favorable to the prevailing party, supports the trial court's findings, and whether those findings, in turn, conform with applicable law." *Commonwealth v. Selenski*, 919 A.2d 229, 231 (Pa.Super.2007).

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

\* \* \* \* \* \*

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.

*Jones*, 886 A.2d at 699 (citation omitted).

¶ 17 Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

### Rule 600. Prompt Trial

\* \* \* \* \* \*

(A) (3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at

liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

\* \* \* \* \* \*

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

 (1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

 (2) any period of time for which the defendant expressly waives Rule 600;

 (3) such period of delay at any stage of the proceedings as results from:

 (a) the unavailability of the defendant or the defendant's attorney;

 (b) any continuance granted at the request of the defendant or the defendant's attorney.

Pa.R.Crim.P. 600.

 ¶ 18 When assessing a Rule 600 claim, we must determine whether there is excludable and/or excusable time. *See Jones,* 886 A.2d at 700. A motion to dismiss under Rule 600 should be denied where the Commonwealth exercises due diligence in bringing the case to trial before the run date. *See id.* "Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Hunt,* 858 A.2d at 1241–42 (emphasis omitted). Moreover, judicial delay can support the grant of an extension of the Rule 600 run date. *See Commonwealth v. Aaron,* 804 A.2d 39, 43 (Pa.Super.2002); *see also Commonwealth v. Spence,* 534 Pa. 233, 627 A.2d 1176, 1181 (1993) (finding judicial delay supports the grant of an extension of the run date where the trial court establishes "it has devoted a reasonable amount of its resources to the criminal docket and that it scheduled the criminal trial at the earliest possible date consistent with the court's business.") (citation omitted).

¶ 19 Trippett initially argues that the 365 day run date occurred on November 3, 2003, since the Commonwealth filed the criminal complaint on November 3, 2002. We find no merit in this assertion. Here, the police did not arrest Trippett until October 7, 2003. Rule 600(C)(1) defines excludable time as "the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence[.]" Trippett does not advance any argument that the Commonwealth did not exercise due diligence in attempting to locate and arrest Trippett following its filing of the criminal complaint. Therefore, the period between the filing of the complaint and Trippett's arrest, 339 days, is excludable from the run date under Rule 600.

 ¶ 20 Trippett also argues that the trial conducted on May 19, 2005, was well beyond the 365 day run date because the Commonwealth did not seek to avoid the delay by having a new judge assigned to the case. Brief for Appellant at 16–18. At its hearing on the Rule 600 motion on May 18, 2005, the day before the jury trial commenced, the trial court found that 307 days had passed as of November 15, 2004. Trippett does not seem to dispute this number. On November 15, 2004, the case had been listed before Judge Bright for the start of Trippett's jury trial. Judge Bright however, was engaged in a trial on November 15 and decided to move Trippett's trial to the following day. The next

day, Judge Bright was still presiding over the other trial. The Commonwealth inquired as to whether there were any other courtrooms available and asked Judge Bright to continue to roll the case over day-to-day to bring it to trial. N.T., 5/18/05, at 5, 11–14, 25–27, 30–32. However, Judge Bright, electing to keep the case, continued the case until May 16, 2005. The Commonwealth made an oral motion to extend the run date pursuant to Rule 600. N.T., 5/18/05, at 6. The trial court docket indicates the trial court ruled the time excludable under Rule 600.

¶ 21 Here, the run date had not expired when the case came to trial on November 15, 2004. Indeed, the Commonwealth was ready to proceed with the trial and it was only the unavailability of Judge Bright that caused the delay until May of 2005. Moreover, the Commonwealth attempted to have the case reassigned to another judge but none were available. It is well-settled that the Commonwealth cannot control the schedule of the trial courts and that therefore "[j]udicial delay can support the grant of an extension of the Rule [600] rundate." *Spence*, 627 A.2d at 1181; *see also Commonwealth v. Preston*, 904 A.2d 1, 14 (Pa.Super.2006) (*en banc*) (finding judicial delay may justify postponement of trial where "the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of 'scheduling difficulties and the like.'"); *Commonwealth v. Nellom*, 388 Pa.Super. 314, 565 A.2d 770, 772–73 (1989) (finding time is not chargeable to the mechanical run date where the case is scheduled for the earliest possible date consistent with the court's business). Based upon the abovementioned, we conclude that the Commonwealth exercised due diligence in attempting to fulfill the requirements of Rule 600. *See Commonwealth v. Robbins*, 900 A.2d 413, 415 (Pa.Super.2006) ("Where the

Commonwealth was prepared to proceed throughout the pendency of a case, it demonstrated that it was prosecuting the defendant's case with due diligence."). For the foregoing reasons, we find no merit in Trippett's first question.

■ ¶ 22 In his second question presented, Trippett again raises three issues within his question. Trippett first argues that the verdicts were against the weight of the evidence due to T.T.'s uncorroborated and inconsistent testimony. Brief for Appellant at 19–20. In reviewing a weight of the evidence claim, our standard of review is as follows:

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

*Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa.Super.2004) (citation omitted). "Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (2003). "Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim." *Id.*

¶ 23 We are unconvinced by Trippett's argument, which is based upon the supposed unreliability of T.T.'s testimony. Trippett does not cite to any particular inaccuracies but instead makes a blanket statement that T.T.'s testimony was uncorroborated and unreliable. Brief for Appellant at 20. Trippett is asking this Court to determine the credibility of the victim.

This is outside the purview of this Court. *See Champney,* 832 A.2d at 408 ("The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact.") (internal citation omitted). Here, the finder of fact was free to believe the testimony of the victim, T.T. After a review of the testimony, we find that the testimony was not so unreliable as to warrant a new trial. As such, we conclude that the trial court did not abuse its discretion in finding the verdict was supported by the weight of the evidence.

¶ 24 Trippett also argues that the trial court abused its discretion when it denied his pretrial motion *in limine.* Brief for Appellant at 20. Trippett had filed the motion to preclude the Commonwealth from using his prior convictions of burglary and robbery to impeach his testimony. Trippett, while acknowledging that the convictions are admissible under Pennsylvania Rule of Evidence 609, nevertheless argues that the prejudice he suffered by their inclusion significantly outweighed any probative value. Brief for Appellant at 21. Trippett concludes that he should have been allowed to testify without the fear of being impeached by these prior convictions. Brief for Appellant at 21.

¶ 25 It is well-settled that "[t]he admission of prior bad acts is within the discretion of the trial court and will only be reversed upon a showing of abuse of discretion." *Commonwealth v. Chmiel,* 585 Pa. 547, 889 A.2d 501, 534 (2005). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence

of record." *Commonwealth v. Harris,* 884 A.2d 920, 924 (Pa.Super.2005) (citation omitted).

¶ 26 Pennsylvania Rule of Evidence 609 provides, in pertinent part:

**Rule 609. Impeachment by evidence of conviction of crime**

[17] **(a)** General Rule. For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or nolo contendere, shall be admitted if it involved dishonesty or false statement.

**(b)** Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Pa.R.E. 609(a)-(b). "Where the date of conviction or last date of confinement is within ten years of the trial, evidence of the conviction of a *crimen falsi* is **per se admissible.** If more than ten years have elapsed, the evidence may be used only after written notice and the trial judge's determination that its probative value substantially outweighs its prejudicial effect." Pa.R.E. 609, Comment (emphasis added); *see also Commonwealth v. Randall,* 515 Pa. 410, 528 A.2d 1326, 1328–29 (1987). Moreover, "[r]obbery and burglary are considered *crimen falsi* and convictions for

200

these offenses are admissible for impeachment purposes." *Harris*, 884 A.2d at 925.

¶ 27 Here, Trippett is not disputing the fact that the robbery and burglary convictions occurred within ten years of the present trial. Brief for Appellant at 21. Under Rule 609 and *Randall*, the trial court properly admitted the evidence as the convictions occurred within ten years of the trial. It did not need to discuss the potential prejudice. As such, we conclude Randall's question has no merit.

¶ 28 Trippett also argues that the trial court erred in not granting him a new trial because of several purported errors in its instructions to the jury. Brief for Appellant at 22–25. Our standard of review in assessing a trial court's jury instructions is as follows:

> [W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Kerrigan*, 920 A.2d 190, 198 (Pa.Super.2007) (internal citations, quotation marks, and brackets omitted).

¶ 29 First, Trippett complains that, in its guilt phase charge, the trial court instructed the jury that "[a] reasonable doubt is a doubt that would cause reasonable, careful and sensible persons to pause, hesitate, or refrain from acting upon a matter of importance in his or her own affairs[.]" Brief for Appellant at 23

(quoting N.T., 5/20/05, at 78). Trippett argues that this instruction would cause confusion in the jury's mind because "refrain from acting" signifies a different burden than "pause" or "hesitate" from acting. Brief for Appellant at 23. Trippett, however, provides no citations to case law to support his argument. Moreover, our Supreme Court in *Commonwealth v. Uderra*, 580 Pa. 492, 862 A.2d 74 (2004), has found the exact same charge did not constitute reversible error because the charge, taken as a whole, accurately conveyed the essential meaning of a "reasonable doubt." *See id.* at 92 (finding "the instruction correctly communicated Appellant's presumed innocence, the Commonwealth's burden of proof, and the nature of a reasonable doubt, and directed the jurors to reach their decision based upon all of the evidence."). Similarly, here, the trial court communicated Trippett's presumed innocence, the Commonwealth's burden of proof, the definition of reasonable doubt, and that the jury must reach a decision based on the evidence. N.T., 5/20/05, at 75–87. As such, we find no merit in Trippett's argument.

¶ 30 Trippett next complains that the trial court abused its discretion in its instruction on the concept of a prompt complaint. Brief for Appellant at 23. Trippett argues that the trial court failed to include the rationale behind the prompt complaint—"that a rape victim would complain [at] the first opportunity where she felt safe." Brief for Appellant at 23. In making this argument, however, Trippett fails to argue that the instruction given by the trial court did not accurately instruct the jury as to T.T.'s delay in reporting the crime. Indeed, the instruction was nearly verbatim to the language found in the Suggested Standard Jury Instructions. N.T., 5/20/05, at 95–96. *See also* Pa. S.S.Crim.J.I. § 4.13(A); *Commonwealth v. Jones*, 449 Pa.Super. 58, 672 A.2d 1353,

1357 (1996). Since the trial court's charge was a full and accurate statement of the law, we find no merit in Trippett's argument.

¶ 31 Trippett also claims that the instruction to the jury that it may not draw any adverse inferences from his decision not to call any witnesses at trial was inadequate. Brief for Appellant at 23. We find no merit in this argument. When viewed as a whole, the trial court's instructions indicate Trippett had no burden to produce any evidence; the Commonwealth bore the burden to prove he was guilty of the crimes. N.T., 5/20/05, at 74–76, 96–97 (stating the "defendant doesn't have to do anything."). Furthermore, in its opening instructions, the trial court instructed the jury that "[a] defendant does not have to do anything. A defendant has a constitutional right to remain silent [and] doesn't have to introduce any witnesses[.]" N.T., 5/19/05, at 12. We find that the trial court's instruction, as a whole, accurately stated to the jury the relevant legal principles. Therefore, we find no merit in Trippett's claim.

¶ 32 Trippett next claims that the trial court abused its discretion in its instruction to the jury that the victim's uncorroborated testimony, if found credible, would be enough evidence to convict him. Brief for Appellant at 24. We find this argument to be without merit because under prevailing Pennsylvania law, "the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant[.]" *Charlton*, 902 A.2d at 562. Moreover, the instruction tracked the Suggested Standard Jury Instructions. N.T., 5/20/05, at 94; *see also* Pa.S.S.Crim.J.I. § 4.13(B). As such, we find no merit in Trippett's claim.

¶ 33 Trippett finally claims that the trial court abused its discretion in its instruction regarding the manner of the jury's deliberations. Brief for Appellant at 24. Specifically, Trippett takes issue with the following instruction:

> But no juror should surrender his or her honest convictions as to the weight or effect of the evidence or as to the guilt or innocence of the defendant solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a unanimous verdict.

N.T., 5/20/05, at 117. Trippett claims that the trial court erred in its use of the phrase "honest convictions." Brief for Appellant at 24. Trippett argues that the trial court should have instead used the phrase "his or her honest belief or opinion." Brief for Appellant at 24. Trippett does not cite to any case law to support his argument. *See* Pa.R.A.P. 2119(a) (stating argument should contain "such discussion and citation of authorities as are deemed pertinent."). Moreover, the trial court's instruction closely tracks the language of section 7.05(6) of the Suggested Standard Jury Instructions, a point Trippett concedes. Brief for Appellant at 24. As such, we find no merit in Trippett's claim. For the foregoing reasons, we find no merit in Trippett's second question.

¶ 34 In support of his third question, Trippett challenges the discretionary aspects of his sentence. Specifically, Trippett argues that the sentence imposed was excessive even though the sentence was within the statutory limits. Brief for Appellant at 25–26.

¶ 35 Our standard of review in sentencing matters is well settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appel-

lant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa.Super.2006) (citation omitted).

¶ 36 "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa.Super.2004). First, Trippett must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal. *See* Pa.R.A.P. 2119(f). Second, Trippett must demonstrate that a substantial question exists as to whether the sentence imposed is inappropriate under the Sentencing Code. *See* 42 Pa.C.S. § 9781(b); *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17, 20 (1987). We have found a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Bullock*, 868 A.2d 516, 528 (Pa.Super.2005) (citation and internal quotation marks omitted). A Rule 2119(f) statement is inadequate when it "simply contains incantations of statutory provisions and pronouncements of conclusions of law[.]" *Id.* at 529 (citation omitted).

¶ 37 Trippett has included a Rule 2119(f) statement and contends that he has raised a substantial question as the sentence, which was within the standard range, was excessive. Brief for Appellant at 26. In *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002) (plurality), the Supreme Court of Pennsylvania stated that a claim that a sentence, which is within the statutory limits, is excessive can raise a substantial question. *See* 812 A.2d at 627–28.

This does not mean, however, that the Superior Court must accept bald allegations of excessiveness. Rather, only where the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process, will such a statement be deemed adequate to raise a substantial question so as to permit a grant of allowance of appeal of the discretionary aspects of the sentence.

*Id.* at 627; *see also Commonwealth v. Reynolds*, 835 A.2d 720, 733 (Pa.Super.2003) (concluding that bald allegations presented in Appellant's Rule 2119(f) statement do not present a substantial question).

¶ 38 In his Rule 2119(f) statement, Trippett merely states that his sentence is excessive. Brief for Appellant at 27. Trippett does not set forth the specific provision of the Sentencing Code or the fundamental norm underlying the sentencing process that the trial court violated in imposing the sentence. Accordingly, we find that Trippett has failed to raise a substantial question that his sentence was excessive. *See Commonwealth v. Ladamus*, 896 A.2d 592, 596 (Pa.Super.2006) (finding Appellant's failure to indicate the violation of either a fundamental norm or of the Sentencing Code in his Rule 2119(f) statement does not warrant a review of the merits that the sentence was excessive); *Rossetti*, 863 A.2d at 1194 (finding Appellant's bald assertion that sentence was excessive did not raise a substantial question). As such, we find Trippett's bald

allegation insufficient to permit discretionary review.

¶ 39 For the foregoing reasons, we affirm the judgment of sentence.

¶ 40 Judgment of sentence **AF-FIRMED.**