J-S17032-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
:         PENNSYLVANIA
Appellee   :
:
v.   :
:
RAYMOND HOCKMAN AIDOO   :
:
Appellant   :   No. 1381 WDA 2022

Appeal from the Judgment of Sentence Entered May 26, 2022
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s):  CP-65-CR-0002397-2018

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:         **FILED: October 4, 2023**

Appellant, Raymond Hockman Aidoo, appeals from the judgment of sentence entered in the Westmoreland County Court of Common Pleas, following his bench trial conviction for indecent assault.[1]  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> In 2017, [Victim] and [Appellant] were in a six-to-seven-month relationship with the two living together at her apartment in Greensburg, Westmoreland County, Pennsylvania.  On the morning of April 24, 2017, [Victim] broke off their relationship.  As she was getting dressed for a conference at her school, [Appellant] held her [arms] and began kissing her on the neck, chest and lips.  He directed her movements to the bedroom and pushed her onto the bed.  He the[n] attempted to perform oral sex on [Victim] and she told him to stop.  After [Victim] managed to get [Appellant] to leave the bedroom, she called a friend who

---

[1] 18 Pa.C.S.A. § 3126(a).

came to the apartment and made [Appellant] leave. [Victim] then called her parents and the police.

[That same day], Trooper Brandon Yeager, of the Pennsylvania State Police, met with [Victim] at the state police barracks. [Victim] was visibly upset and distraught. She reported that she had been sexually assaulted by her ex-boyfriend, [Appellant]. At the direction of Trooper Yeager, [Victim] went to the hospital where they collected her underwear and did a rape examination.

On May 5, 2017, Trooper Yeager interviewed [Appellant] at the state police barracks. [Appellant] did not have counsel and was not in custody at the time of the interview. [Appellant] confirmed everything that [Victim] had reported but denied that he had kissed her or touched her in any sexual manner. On December 7, 2017, Trooper Yeager approached [Appellant] in order to collect a DNA sample from him. After [Appellant] signed a written consent to collect the evidence … he confessed that he had sexually assaulted [Victim]. The DNA evidence was submitted for analysis and it was determined that [Appellant] could not be excluded as a contributor of DNA found on [Victim's] underwear and genital area[.]

(Trial Court Opinion, filed 12/8/22, at 2-3) (unpaginated).

The court held a bench trial on August 27, 2021. At the close of the Commonwealth's case, Appellant moved for a judgment of acquittal and the trial court denied the motion. At the conclusion of the evidence, the court found Appellant guilty of indecent assault and not guilty of involuntary deviate sexual intercourse and simple assault. On May 26, 2022, the court sentenced Appellant to two years of probation. Appellant timely filed a post-sentence motion on Monday June 6, 2022, which the court denied on October 31, 2022. On November 28, 2022, Appellant filed a timely notice of appeal. The court ordered Appellant to file a concise statement of errors complained of on appeal

pursuant to Pa.R.A.P. 1925(b) on December 1, 2022, and Appellant complied on December 8, 2022.

Appellant raises the following issues for our review:

I. Did the trial court err when it denied Appellant's Motion for Judgment of Acquittal where the Commonwealth failed to meet its burden of proof because evidence of record demonstrated that the sexual contact between Appellant and [Victim] was consensual and where the Commonwealth failed to prove beyond a reasonable doubt that Appellant acted with the *mens rea* necessary to commit the crime of indecent assault?

II. Did the trial court err when it denied Appellant's Motion for a New Trial where the verdict so shocked one's sense of justice because evidence of record, while showing that sexual contact did take place, showed that said conduct was with the consent of [Victim] and where evidence of record demonstrated that Appellant lacked the *mens rea* necessary to commit the crime of Indecent Assault?

(Appellant's Brief at 8).

In his issues combined, Appellant argues that the Commonwealth failed to present sufficient evidence to demonstrate that Appellant knowingly or recklessly touched Victim without her consent. Appellant asserts that Victim testified that she did not physically resist Appellant's efforts to guide her to the bedroom, and Appellant was merely expressing his love for her and trying to convince her to stay in the relationship during the incident. Appellant insists "the Commonwealth failed to prove that Appellant's *mens rea* was that of a man forcing a non-consenting party into a bedroom as opposed to a man who said 'I love you' and received a reply of 'stop' or 'no.'" (Appellant's Brief at 15). Appellant contends that Victim's words in this context could easily be

interpreted as a refusal to continue to work on the relationship. Appellant maintains that once he realized that Victim wanted him to stop in the bedroom, Appellant immediately stopped. Appellant asserts that the evidence adduced at trial was insufficient to prove beyond a reasonable doubt that Appellant knew Victim was not consenting to his intimate gestures.

Further, Appellant argues that the testimony of Victim and Trooper Yeager was entirely unreliable. Appellant contends that Trooper Yaeger's testimony that Appellant admitted that he had sexually assaulted Victim is not credible because Trooper Yaeger failed to note this admission in his report. Appellant asserts that Trooper Yeager mischaracterized Appellant's expression of remorse and concern over possible immigration consequences as an admission of guilt. Appellant claims that Victim's testimony is also unreliable because she testified at the preliminary hearing that the entire incident took only five to ten seconds but stated at trial that the incident lasted two to three minutes. Appellant suggests that Victim wanted to remove Appellant from her apartment as fast as possible so that she could resume her relationship with a man that she dated before Appellant, rendering her testimony inherently unreliable. Appellant concludes that the court erred in denying his motion for judgment of acquittal and motion for new trial because the Commonwealth failed to present sufficient evidence to sustain the verdict and the verdict was against the weight of the evidence. We disagree.

When examining a challenge to the sufficiency of evidence, our standard

of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hutchinson*, 947 A.2d 800, 805-06 (Pa.Super. 2008), *appeal denied*, 602 Pa. 663, 980 A.2d 606 (2009) (quoting *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super. 2006), *appeal denied*, 592 Pa. 778, 926 A.2d 972 (2007)) (emphasis omitted). "A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Hutchinson, supra* at 805.

Additionally:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the

- 5 -

evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the…verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408

(2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004)

(most internal citations omitted). Additionally,

When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

*Commonwealth v. Trippett*, 932 A.2d 188, 198 (Pa.Super. 2007) (internal

citation omitted).

The Crimes Code defines indecent assault in relevant part as follows:

**§ 3126. Indecent assault**

**(a) Offense defined.**—A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

(1) the person does so without the complainant's

consent[.]

18 Pa.C.S.A. § 3126(a)(1).

Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101. The term sexual or other intimate body parts "is not limited to only sexual body parts, but rather, was also intended to mean a body part that is personal and private, and which the person ordinarily allows to be touched only by people with whom the person has a close personal relationship, and one which is commonly associated with sexual relations or intimacy." **Commonwealth v. Gamby**, ___ Pa. ___, 283 A.3d 298, 313-14 (2022) (concluding that grabbing and kissing victim's neck constituted indecent contact as defined in indecent assault statute).

The statute defining indecent assault (lack of consent) does not specifically delineate the *mens rea* required to establish culpability. For such offenses, the Commonwealth must prove that the defendant acted intentionally, knowingly, or recklessly with respect to material elements of the offense. **See** 18 Pa.C.S.A. § 302(c) (stating: "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto").

Regarding the different kinds of culpability:

(1) A person acts intentionally with respect to a material element of an offense when:

- 7 -

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(1-3). "The Commonwealth is not required to prove *mens rea* by direct evidence. Frequently such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence." ***Commonwealth v. Beasley***, 138 A.3d 39, 48 (Pa.Super. 2016), *appeal denied*, 639 Pa. 579, 161 A.3d 791 (2016) (internal citation omitted). Additionally, "[i]n a prosecution for sex offenses, a verdict may rest on the uncorroborated testimony of the victim." ***Commonwealth v. Cody***, 584 A.2d

- 8 -

992, 993 (Pa.Super. 1991), *appeal denied*, 527 Pa. 622, 592 A.2d 42 (1991) (internal citation omitted). Further, a sexual offense victim is not required to resist the perpetrator. 18 Pa.C.S.A. § 3107.

Instantly, the trial court found that the evidence was sufficient to establish that Appellant knowingly, or at the very least, recklessly initiated indecent contact with Victim without her consent. The court explained:

> In this case, the [c]ourt, acting as the fact-finder, was able to observe the victim as she testified and found her to be believable in her description of [Appellant]'s actions. The credible evidence proved that [Appellant] kissed [Victim]'s neck, chest and lips without her consent. Indeed, the evidence was that [Victim] directly told [Appellant] no and to stop kissing her. The evidence further establishes that [Appellant] attempted to perform oral sex on her and only stopped after she repeatedly demanded that he do so. [Victim] testified clearly about [Appellant]'s kissing and touching her on intimate parts of her body. She further testified that she expressed to [Appellant] that his advances were not welcomed or wanted. This evidence is sufficient to establish that [Appellant] engaged in indecent contact with the victim without her consent.
>
> * * *
>
> [Appellant] appears to argue that he was justified in a belief that [Victim] consented to his actions because she did not physically resist him. It is well recognized that a sexual offense victim is not required to resist the perpetrator. The law, therefore, does not require a victim of sexual assault to offer physical resistance—a victim's verbal expression that the conduct is unwanted is enough to evidence her lack of consent. [Victim] testified that she resisted [Appellant]'s actions by repeatedly telling him that she did not want him to kiss her or touch her. The evidence, thus, was patent that [Victim] made clear to [Appellant] that she did not welcome his sexual advances and that his conduct was not wanted. This was sufficient to establish that [Appellant] acted at least recklessly and at his own peril when he did

not heed [Victim]'s protests. Rather than constituting actions "to save his relationship," [Appellant]'s conduct disregarded completely [Victim]'s words and actions expressing her lack of consent and crossed the line into commission of a crime.

(Trial Court Opinion at 6-8) (unpaginated) (citations omitted). The record supports the court's analysis. Additionally, the record does not support Appellant's claim that he was unaware that Victim was refusing his touch because he believed her verbal refusals were directed at Appellant's attempts to change her mind about their relationship. Appellant's actions did not occur while they were actively engaged in conversation about their relationship. Rather, Victim testified that she broke up with Appellant on the morning of the assault. Although they had lengthy conversations about their relationship, Victim stood firm on her decision. Hours after Victim informed him of her decision and immediately after she got out of the shower, Appellant began kissing her on her neck, chest, and lips. Victim verbalized her non-consent by stating "no," "stop it," and "don't" at least ten to fifteen times. Appellant disregarded her objections and pushed her towards the bedroom where he initiated oral sex despite Victim's continued protests.

Thus, Victim was clear that she wanted to end their relationship, did not in any way indicate that she welcomed Appellant's advances, and verbally protested multiple times when Appellant initiated contact. Under these circumstances, there was no ambiguity or room to misinterpret Victim's refusal. Viewed in the light most favorable to the Commonwealth as the

verdict winner, the evidence shows Appellant knowingly or recklessly touched Victim without her consent. ***See*** 18 Pa.C.S.A. § 302(b)(2) and (3); ***Beasley, supra***; ***Cody, supra***. Therefore, the Commonwealth presented sufficient evidence to prove indecent assault. ***See Hutchinson, supra***.

Regarding Appellant's weight claim, the court did not find that either Trooper Yaeger or Victim's testimony was so inconsistent as to be entirely unreliable. Trooper Yaeger testified that Appellant initially denied kissing Victim but during a subsequent interview, after Trooper Yaeger collected a DNA swab from Appellant, Appellant admitted that the assault occurred as Victim reported. Trooper Yaeger stated that Appellant was crying and remorseful during this exchange and was concerned about his immigration status. The fact that Trooper Yaeger did not memorialize the details of this exchange in his report does not render the testimony so unreliable as to render the verdict against the weight of the evidence. ***See Trippett, supra***. Additionally, even if Trooper Yaeger's testimony was unreliable, Victim's testimony alone is sufficient to support the verdict. ***See Cody, supra***.

Similarly, Appellant takes issue with Victim's testimony because Victim initially stated at the preliminary hearing that the oral sex lasted for five to ten seconds after she asked Appellant to stop but stated at trial that it lasted for two to three minutes. When questioned further, Victim stated that it was difficult for her to pinpoint an exact time because it felt like it lasted a long time to her due to the traumatic nature of the incident. This inconsistency

does not undermine her whole testimony as to render the verdict against the weight of the evidence. **See Trippett, supra.** Additionally, Victim's uncertainty about the time frame does not undermine Appellant's conviction because even if Appellant had stopped the oral sex immediately after Victim had asked him to stop, Victim's testimony that Appellant continued to kiss her neck, chest, and lips after she repeatedly asked him to stop would be sufficient to sustain his indecent assault conviction. **See Gamby, supra.** Further, Appellant fails to explain why Victim's wish for Appellant to move out of her apartment after she broke up with him renders her testimony untrustworthy. Based on the foregoing, we discern no abuse of discretion in the court's determination that the verdict was not against the weight of the evidence. **See Champney, supra.** Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/4/2023