J-S16008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

Appellee

v.

RAFAEL VALENTINE

Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1409 EDA 2015

Appeal from the Judgment of Sentence May 11, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0010785-2013

BEFORE:  OTT, J., DUBOW, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED FEBRUARY 09, 2016**

Rafael Valentine ("Appellant") appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following his bench trial convictions for unlawful contact with a minor, endangering the welfare of a child ("EWOC"), corruption of minors, indecent assault, indecent exposure, terroristic threats, and involuntary deviate sexual intercourse with a child ("IDSI").[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts of this case.  Therefore, we have no reason to restate them.

On July 9, 2014, the trial court convicted Appellant of the aforementioned crimes.  On May 11, 2015, the court sentenced Appellant to

---

[1] 18 Pa.C.S. §§ 6318(a)(1), 4304(a)(1), 6301(a)(1)(i), 3126(a)(7), 3127(a), 2706(a)(1), and 3123(b), respectively.

an aggregate term of ten (10) to twenty-six (26) years' incarceration.[2]  On

May 12, 2015, Appellant timely filed a notice of appeal.  Both Appellant and

the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

> IS [APPELLANT] ENTITLED TO AN ARREST OF JUDGMENT WITH REGARD TO HIS CONVICTIONS FOR [IDSI], CORRUPTING THE MORALS OF A MINOR, INDECENT ASSAULT, [EWOC], UNLAWFUL CONTACT WITH A MINOR, INDECENT EXPOSURE AND TERRORISTIC THREATS SINCE THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE VERDICTS OF GUILT AS THE COMMONWEALTH FAILED TO SUSTAIN ITS BURDEN OF PROVING [APPELLANT'S] GUILT BEYOND A REASONABLE DOUBT?
>
> IS THE EVIDENCE [] INSUFFICIENT TO SUSTAIN THE TRIAL COURT'S FINDING THAT [APPELLANT] IS A SEXUALLY VIOLENT PREDATOR [("SVP")]?

Appellant's Brief at 4.

Appellant's issues challenge the sufficiency of the evidence.  When

examining a challenge to the sufficiency of evidence, our standard of review

is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence

---

[2] The court imposed consecutive sentences of seven (7) to twenty (20) years' incarceration for IDSI and three (3) to six (6) years' incarceration for corruption of minors.  The court did not impose additional penalties on Appellant's remaining convictions.

and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super.2011), *appeal denied*, 32 A.3d 1275 (Pa.2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super.2005)).

Further, our review of Appellant's SVP status implicates the following principles:

The determination of a defendant's SVP status may only be made following an assessment by the Board and hearing before the trial court. In order to affirm an SVP designation, we, as a reviewing court, must be able to conclude that the fact-finder found clear and convincing evidence that the individual is a sexually violent predator.

As with any sufficiency of the evidence claim, we view all evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Commonwealth v. Fuentes*, 991 A.2d 935, 941-42 (Pa.Super.2010).

After a thorough review of the record, the brief of the parties, the applicable law, and the well-reasoned opinion of the Honorable Charles A. Ehrlich, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. *See* Trial Court Opinion, filed October 9, 2015, at 7-19 (finding: (1) evidence was sufficient to support conviction of unlawful contact with minor where both victim and her sister testified Appellant told victim to take clothes off for purpose of sexual assault; (2) evidence was sufficient to support conviction of EWOC where testimony established Appellant sexually assaulted victim, in violation of his duty of care to supervise children; (3) evidence was sufficient to support conviction of corruption of minors where Appellant's sexual assault of victim offended the common sense of community; (4) evidence was sufficient to support conviction of indecent assault where testimony established Appellant initiated sexual contact with seven-year-old child on multiple occasions; (5) evidence was sufficient to support conviction of indecent exposure where testimony established victim and sister saw Appellant's genitals when he sexually assaulted victim; (6) evidence was sufficient to support conviction of terroristic threats where testimony established Appellant told victim and sister he would "come get y'all" if they told anyone about the sexual assault to intimidate and silence them; (7) evidence was sufficient to support conviction of IDSI where testimony established Appellant inserted penis into victim's mouth and

- 4 -

buttocks; and (8) evidence was sufficient to support court's finding that Appellant is an SVP where doctor: (i) found mental abnormality pedophilic disorder based on Appellant's sexual assault of prepubescent girl on multiple occasions and Appellant's decision to act upon sexual urges on unwilling victim less than 13 years old when he was in his fifties; (ii) opined Appellant would reoffend due to Appellant's deviant sexual interests and fostering of relationship with children for purpose of sexual victimization consistent with statutory definition of predatory behavior; and (iii) recommended SVP determination).  Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/9/2016

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

Commonwealth of Pennsylvania     :     CP-51-CR-0010785-2013

:

v.

:

Rafael Valentine     :     SUPERIOR COURT
NO. 1409 EDA 2015

CP-51-CR-0010785-2013 Comm. v. Valentine, Rafael
Opinion

**FILED**

OCT 0 9 2015

7355297311     OPINION     Criminal Appeals Unit
First Judicial District of PA

Ehrlich, J.

Rafael Valentine, hereinafter Appellant, was found guilty on July 9, 2014, of unlawful contact with a minor, endangering the welfare of a child, corruption of minors, indecent assault, indecent exposure, terroristic threats, and involuntary deviate sexual intercourse with a child following a non-jury trial.[1] The charges stemmed from multiple instances of sexual assault of Appellant's step-granddaughter in or around June, 2012. Appellant was sentenced on May 11, 2015, to an aggregate term of ten to twenty-six years' incarceration. A timely appeal followed.

Instantly, Appellant claims two points of error:

I.     The defendant is entitled to an arrest of judgment with regard to his convictions for involuntary deviate sexual intercourse, corrupting the morals of a minor, indecent assault, endangering the welfare of children, unlawful contact with a minor, indecent exposure and terroristic threats since the evidence is insufficient to sustain the verdicts of guilt as the Commonwealth failed to sustain its burden of proving the defendant's guilt beyond a reasonable doubt. N.T. 07/09/2014 at 4–5. The Commonwealth failed to prove the essential elements of the crimes charged beyond a reasonable

---

[1] 18 Pa.C.S.A. §§ 6318(a)(1), 4304(a)(1), 6301(a)(1)(i), 3126(a)(7), 3127(a), 2706(a)(1), and 3123(b), respectively.

doubt. The defendant did not: have involuntary deviate sexual intercourse with a child, engage in any course of conduct, corrupt the morals of a minor, encourage any minor to commit a crime, have indecent contact with a child, endanger the welfare of any child, violate any duty of care, prevent or interfere with the making of any report of suspected child abuse, intentionally have contact with a minor to commit a crime, expose his genitals, knew or should have known that any conduct would offend, affront or alarm, communicate any threat to commit a crime of violence with the intent to terrorize or terrorize anyone. The Commonwealth's evidence was speculative, conjectural and inherently unreliable and did not sustain the Commonwealth's burden beyond a reasonable doubt. There were numerous inconsistencies in the testimony presented by the Commonwealth. The Commonwealth's testimony with regard to the reporting of the incident or incidents and the location of the incident or incidents was inconsistent, contradictory, speculative and conjectural. The Commonwealth failed to present any physical evidence to prove the defendant's involvement in the crime or rebut his evidence of good character.

II.     The evidence is insufficient to sustain the trial court's finding that the defendant is a sexually violent predator. N.T. 05/11/2015 at 12. The defendant did not have a prior criminal history and there was no evidence of other incidents with other individuals of a sexual nature. He did not suffer from any mental disease or defect. The defendant did not engage in any acts of a predatory nature. There was no proof that the defendant instituted, established, maintained or promoted any relationship for the purpose of committing sexual crimes or that the defendant's actions were anything other than opportunistic in nature. The defendant did not exhibit signs of a pattern of deviate sexual interest, pedophilia or mental abnormality/personality disorder. There was no increased risk of recidivism. There is no evidence to prove that the defendant fit any of the criteria necessary to be designated as a sexually violent predator.

Appellant's Pa.R.A.P. 1925(b) Statement, 02/03/2015.

As will be discussed below, these claims are without merit. Accordingly, no relief is due.

- 2 -

*Commonwealth's Case*

A.C. and C.C. are the oldest daughters of Angelina Oquendo. Notes of Testimony ("N.T."), 07/02/2014, at 134. At the time of trial, C.C. was nine years old, and A.C. was eleven. *Id.* In the spring and summer of 2012, A.C. and C.C. were attending William Cramp Elementary School. *Id.* at 28. After school, on nights when Ms. Oquendo worked, the girls would often be picked up by either their grandmother or Appellant. *Id.* at 135–36. Appellant had dated Angelina's mother in the past, and was still known as "Pop-pop" to the girls. *Id.* at 136. Appellant lived very close to the elementary school at 123 West Tioga Street. *Id.* at 136–37. The house had a living and dining room combination in the front of the house and a kitchen at the back of the first floor. *Id.* at 35. Upstairs was a single bedroom and bathroom. *Id.*

A.C. testified that she and her sister would go to Appellant's house some afternoons when he picked them up from school. *Id.* at 34. Their mother would pick them up after work, which was usually between five and six o'clock. *Id.* at 138. A.C. said they would do their homework and watch television while at Appellant's house. *Id.* at 36, 40.

A.C. testified that she was aware of two separate instances of abuse. *Id.* at 37–38. The first time she recalled Appellant molesting her sister, he called C.C. upstairs to the bedroom. *Id.* at 38. Appellant asked C.C. to take off her clothes, and put his "private part" in her butt. *Id.* The second occasion A.C. was aware of occurred downstairs. *Id.* at 39. This time, A.C. said Appellant put his penis into C.C.'s mouth. *Id.* at 40. A.C. told Appellant that she was going to tell her mother, and that she would call the police. *Id.* Appellant responded that if she did that he would go to jail and "come get y'all." *Id.*

C.C. was seven years old in the Spring and Summer of 2012. *Id.* at 39, 134. She testified that "something very bad" was done to her when she went to Appellant's house, but had difficulty speaking about it in court. *Id.* at 87. She testified that her bottom was touched and that it didn't feel right. *Id.* at 90. She said this happened more than one time, but could not say exactly how many times. *Id.* at 91. She also testified that Appellant touched her mouth with his "boy part" on more than one occasion. *Id.* at 93–94.

A.C. said she did not say anything about the abuse immediately, because she felt uncomfortable talking about it. *Id.* at 40. C.C. said that Appellant had scared her and her sister, and that was why she did not tell anybody about the abuse at first. *Id.* at 99. When A.C. did tell her mother, she wrote a letter first. *Id.* at 41. Her mother did not immediately read the letter, so she told her. *Id.* Both girls said that after giving their mother the letter, they did not see Appellant again. *Id.* at 74, 102.

In the Summer of 2013, Angelina Oquendo picked the girls up from daycare one day and A.C. handed her papers and asked her to read it. *Id.* at 143. Ms. Oquendo initially thought something had happened that day at daycare, and asked A.C. to tell her. *Id.* at 144. A.C. and C.C. began crying and explained to her what Appellant had done to C.C.. *Id.* at 145–46. When Ms. Oquendo asked why they had not told her sooner, they said that they had been threatened and were afraid. *Id.* at 146. After speaking with the girls, Ms. Oquendo took them to her mother's house, and her mother called the police. *Id.* at 152.

Ms. Oquendo, C.C., and A.C. were first interviewed by Officer Meissler at the Special Victim's Unit on July 3, 2013. *Id.* at 154, 158. The girls were interviewed individually without their mother present. *Id.* Another interview took place later at the Philadelphia Children's Alliance, and the girls were once again interviewed separately without their mother. *Id.* at 155–

- 4 -

56. Ms. Oquendo testified that prior to trial, she told the girls they did not have to be scared, and to tell the truth, but otherwise did not discuss the trial with them. *Id.* at 160.

Ms. Oquendo testified that the behavior of both girls has changed since this incident. *Id.* at 161. She said that C.C. has become angry and aggressive. *Id.* She also had to repeat second grade. *Id.* Ms. Oquendo said that A.C. had become isolated and now spends much more time alone in her room. *Id.*

### Defense Case

As part of his defense, Appellant testified at trial. He testified that all the allegations of sexual abuse were untrue. N.T., 07/07/2014, at 63. He testified that he would rarely watch C.C. and A.C. after school during the spring and summer, because he would have been working as a landscaper at that time. *Id.* at 64–65. He testified that he would pick them up from school in January and February when he was not working. *Id.* at 64. He could not say definitely if he had picked them up in June of 2012. *Id.*

Appellant testified that he treated all of Ms. Oquendo's children with love and care. *Id.* at 67–68. He also has five biological grandchildren, and he testified that he treated Ms. Oquendo and her children as if they were blood relations. *Id.* at 70.

Appellant offered several character witnesses in his defense. *Id.* at 32. Maria Ortiz, Appellant's ex-wife, had been married to him for six years. *Id.* at 33. They had two children together, Luis and Angelica. *Id.* at 36. Ms. Ortiz testified that Appellant had a good reputation in the community for being peaceful, law-abiding, and truthful. *Id.* at 33. Brook Matthews had known Apellant for over five years as the father of her boyfriend. *Id.* at 34. Ms. Matthews testified that Appellant was hard-working, generous, and family-oriented. *Id.*

Appellant's son, Luis Ortiz, also testified as part of the defense case. He testified that Appellant treated Ms. Oquendo as if he was his own daughter. *Id.* at 40. Appellant had loaned her money when her father died so she could travel to Puerto Rico. *Id.* at 41, N.T., 07/02/2014, at 167. Ms. Oquendo had testified that he gave her $100. N.T., 07/02/2014, at 167. Mr. Ortiz said it was "7, 8, 900" but was unsure of the exact amount. N.T., 07/07/2014, at 41. Mr. Ortiz believed "stories started popping up" after Appellant asked for the money back. *Id.* at 42. Mr. Ortiz first heard "stories" on July 4, 2013, and confronted Appellant about the alleged abuse. *Id.* at 43. Appellant denied the allegations. *Id.* at 44.

Mr. Ortiz admitted he had no first-hand knowledge about the money Appellant lent Ms. Oquendo. *Id.* at 45. Appellant told him about the initial loan. *Id.* at 41. A friend of Appellant's told Mr. Ortiz that Appellant was running low on cash and had asked for the money back. *Id.* at 45–46.

## Discussion

### *Sufficiency of the Evidence*

Appellant first argues on appeal that the evidence presented was insufficient to convict him of involuntary deviate sexual intercourse, corruption of minors, indecent assault, indecent exposure, endangering the welfare of a child, or terroristic threats. For the reasons outlined below, this claim is without merit.

The standard of review of sufficiency claims is well-settled:

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the

light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Thompson*, 93 A.3d 478, 489 (Pa. Super. 2014) (quoting *Commonwealth v. Widmer*, 560 Pa. 308, 319, 744 A.2d 745, 751 (2000) (internal citations omitted)).

A conviction may be sustained on wholly circumstantial evidence, and the trier-of-fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. *Commonwealth v. Burton*, 2 A.3d 598, 601 (Pa. Super. 2010) (quoting *Commonwealth v. Galvin*, 603 Pa. 625, 634–35, 985 A.2d 783, 789 (2009)). Any doubts as to a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. *Commonwealth v. Bruce*, 916 A.2d 657, 661 (Pa. Super. 2007).

In the instant case, Appellant was convicted of unlawful contact with a minor, which is defined, in relevant part, as follows:

§ 6318. Unlawful Contact with Minor

(a) Offense Defined. -- A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

(1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S.A. § 6318.

Unlawful contact has been previously defined by appellate courts:

Even though the statute is titled "unlawful contact with a minor," it is best understood as "unlawful communication with a minor." By its plain terms, the statute prohibits the act of communicating with a minor for enumerated sexual purposes. The communication may take place in person, on the telephone, via a computer, or in other ways. Because the crime is complete as of the moment of communication, it is not necessary for the defendant to take any further affirmative steps to have physical contact with the minor, such as driving to a hotel.

- 7 -

*Commonwealth v. Rose*, 960 A.2d 149, 152–53 (Pa. Super. 2008) (internal citations omitted).

With this understanding, courts have found unlawful contact from a variety of communications beyond purely verbal commands. For example, in *Commonwealth v. Oliver*, the appellant's gestures and nudging of the victim, with the intent to have the victim perform oral sex on him, was sufficient to convict the appellant of unlawful contact with a minor. 946 A.2d 1111, 1114 (Pa. Super. 2008). In that case, the appellant had previously explicitly asked of the victim's sisters to "suck his penis," further supporting his intent to similarly violate the victim. *Id.* Therefore, any form of communication with a minor, with the intent to commit enumerated sexual acts, is sufficient to establish the crime of unlawful contact with a minor.

In the instant case, testimony at trial established that Appellant called C.C. upstairs to his bedroom and told her to take off her clothes on at least one occasion. This was done with the intent to perform sexual acts, which C.C. testified happened more than once. According to the testimony of both the victim and A.C., Appellant called C.C. upstairs and told her to take her clothes off so that he could sexually assault her by inserting his penis into her buttocks. Given this testimony from both girls, the evidence was sufficient to establish that Appellant communicated these commands to C.C. for the purpose of engaging in sexual activity.

Next, Appellant was convicted of endangering the welfare of a child, which is defined, in relevant part, as follows:

§ 4304. Endangering Welfare of Children

(a) Offense Defined. --

> (1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

18 Pa.C.S.A. § 4304.

-8-

An individual is not required to be a parent or legal guardian of a child to be found guilty of endangering the welfare of a child. *Commonwealth v. Trippett*, 932 A.2d 188, 195 (Pa. Super. 2007). "The language of the statute indicates that any 'other person' who supervises the child is eligible to be charged and convicted under the statute." *Id.* Although Appellant claims to have violated no duty of care, testimony from multiple witnesses, as well as Appellant himself, established that Appellant would often watch A.C. and C.C. after school. Appellant was therefore certainly supervising the welfare of the girls for the several hours after school that they would stay at his house. Both girls testified that, while under Appellant's supervision, Appellant sexually assaulted C.C. on at least two separate occasions.

The Superior Court has previously held that even uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant of endangering the welfare of a child. *Trippett*, 932 A.2d at 195. In the instant case, the testimony of the victim established that Appellant sexually assaulted her by placing his genitals in her mouth and buttocks while she was under his supervision in his home. This was corroborated by the victim's sister, who was also under the supervision of Appellant and witnessed two separate instances of sexual assault. Given the evidence that Appellant had a duty of care to the two children he was supervising, and violated that duty according to the testimony of both children, the evidence was sufficient to find Appellant guilty of endangering the welfare of a child.

Appellant was also convicted of corruption of minors, which is defined, in relevant part, as follows:

§ 6301. Corruption of Minors

(a) Offense Defined. --

> (1) (i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who

-9-

aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6301.

This Court has expounded on the definition of the corruption of minors, holding, "[actions that] would offend the common sense of the community and the sense of decency, propriety and morality, which most people entertain," are those which shall be considered corrupting a minor. *Commonwealth v. Pankraz*, 382 Pa.Super. 116, 554 A.2d 974, 977 (1989), quoting *Commonwealth v. Randall*, 183 Pa.Super. 603, 133 A.2d 276 (1957).

*Commonwealth v. Leatherby*, 116 A.3d 73, 82 (Pa. Super. 2015).

In multiple instances, Pennsylvania courts have determined that acts of sexual abuse fall under this definition of actions that would offend "the sense of decency, propriety and morality, which most people entertain." *Id.* For example, in *Leatherby*, the Court found that the "extensive physical, sexual, and emotional abuse by Leatherby" of the minor victim was sufficient to establish his conviction for corruption of minors. *Id.* Similarly, in *Commonwealth v. Bishop*, the evidence established that the defendant, while watching his five-year-old step-granddaughter for the day, touched both her vagina and buttocks and encouraged her to touch his penis and buttocks. 742 A.2d 178, 182 (Pa. Super. 1999). The Court found this evidence sufficient to sustain a conviction of corruption of minors. *Id.* at 190.

In the instant case, evidence presented at trial established that Appellant had "touched [C.C.'s] mouth with his 'boy part'" and penetrated her buttocks while watching her and her sister after school. C.C. testified that this happened multiple times, and A.C. was able to recount two specific instances of sexual abuse. The conviction for corruption of minors under these circumstances is consistent with prior findings that acts of sexual assault "offend the common sense of the community." Therefore, the evidence was sufficient to find Appellant guilty of corruption of minors.

- 10 -

Next, Appellant was convicted of indecent assault, which is defined, in relevant part, as follows:

§ 3126. Indecent Assault

(a) Offense Defined. -- A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

(7) the complainant is less than 13 years of age.

18 Pa.C.S.A. § 3126.

Indecent contact is defined as "Any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101. The touching or fondling of a child's sexual or intimate parts has continuously been found by this court to constitute indecent assault as defined by statute. *See Commonwealth v. Robinson*, 931 A.2d 15, 25 (Pa. Super. 2007) ("Appellant also touched the victim's vagina. This act constituted indecent assault.); *Commonwealth v. Castelhun*, 889 A.2d 1228, 1234 (Pa. Super. 2005) ("Castelhun repeatedly touched J.T. in a sexual way when he placed his penis into J.T.'s mouth, digitally penetrated her genitalia, and inserted his penis into her vagina, all for the sole purpose of gratification of his sexual desires.").

At trial, it was established that Appellant touched C.C.'s mouth and buttocks with his genitals on multiple occasions. Testimony was presented from both the victim and her sister that Appellant penetrated the victim's buttocks with his penis, and placed his penis in her mouth. This sexual contact with C.C., who was about seven years old at the time of the assault, was sufficient to establish indecent assault.

Further, Appellant was convicted of indecent exposure, which is defined, in relevant part, as follows:

- 11 -

§ 3127. Indecent Exposure

(a) Offense Defined. -- A person commits indecent exposure if that person exposes his or her genitals in any public place or in any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm.

18 Pa.C.S.A. § 3127.

C.C. testified that she had seen Appellant's genitals when he sexually assaulted her. N.T., 07/02/2014, at 127. In addition to C.C.'s testimony that Appellant's genitals touched her mouth and buttocks, C.C.'s sister testified to having witnessed two separate acts of sexual assault. A.C. testified that in each instance Appellant had his pants slightly pulled down, and his penis was exposed and visible. N.T., 07/02/2014, at 54; 64. Appellant's genitalia being exposed to two children under ten years old would certainly fall under circumstances Appellant should have known were "likely to offend, affront or alarm."

Appellant was also convicted of terroristic threats, which is defined, in relevant part, as follows:

§ 2706. Terroristic Threats

(a) Offense Defined. -- A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

   (1) commit any crime of violence with the intent to terrorize another.

18 Pa.C.S.A. § 2706.

As recognized by this court, neither the ability to carry out the threat nor a belief by the person threatened that it will be carried out is an essential element of the crime. Rather, the harm sought to be prevented by the statute is the psychological distress which follows from an invasion of another's sense of personal security.

Commonwealth v. Hudgens, 582 A.2d 1352, 1358 (1990) (internal quotations omitted).

In determining the sufficiency of the evidence in cases of terroristic threats, "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence,

and 2) the threat was communicated with the intent to terrorize another." *Commonwealth v. Reynolds*, 835 A.2d 720, 730 (Pa. Super. 2003) (citing *Commonwealth v. Tizer*, 684 A.2d 597, 600 (Pa. Super. 1996)).

In the instant case, both A.C. and C.C. were asked at trial why they did not tell their mother sooner about the sexual assault. Both girls testified that they were afraid, and that Appellant had threatened them. A.C. specifically recalled Appellant saying that if they told anyone he would "come get y'all." N.T., 07/02/2014, at 40. Appellant's intent in this threat was clearly to intimidate and silence the girls so they would not tell anyone about the sexual assault. The threat successfully intimidated both girls, as they waited approximately a year to tell their mother about the abuse. Therefore, the evidence was sufficient to convict Appellant of the crime of terroristic threats.

Finally, Appellant was convicted of involuntary deviate sexual intercourse, which is defined, in relevant part, as follows:

§ 3123. Involuntary Deviate Sexual Intercourse

(a) Offense defined.--A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:
    (1) by forcible compulsion;
    (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
    (3) who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring;
    (4) where the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance;
    (5) who suffers from a mental disability which renders him or her incapable of consent; or
    (7) who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other.

(b) Involuntary deviate sexual intercourse with a child.--A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree,

- 13 -

when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age.

18 Pa.C.S.A. § 3123.

Pennsylvania courts have repeatedly found that "[i]n the case of sexual offenses, the testimony of the victim alone is sufficient to convict, and medical evidence is not required if the fact finder believes the victim." *Commonwealth v. Jette*, 818 A.2d 533, 534 (Pa. Super. 2003) (citing *Commonwealth v. Owens*, 649 A.2d 129, 133 (Pa. Super. 1994)). *See also Commonwealth v. Davis*, 650 A.2d 452, 477 (Pa. Super. 1994); *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005).

In the instant case, the testimony of the victim, C.C., established that Appellant inserted his penis into her mouth and buttocks. C.C. testified that Appellant did this to her on multiple occasions, although she could not say with certainty how many times. This testimony was corroborated by the testimony of the victim's sister, A.C., who witnessed these acts on two separate days.

Although Appellant has given a conflicting account of events, and denied any criminal acts, this does not necessitate a finding of not guilty. A fact finder is always free to weigh the credibility of witnesses and believe either account, and such credibility determinations are generally not disturbed on appeal. *Owens*, 649 A.2d at 133. Given the testimony of the two girls regarding the acts of sexual assault, there was sufficient evidence to allow the trier of fact to find Appellant guilty of involuntary deviate sexual intercourse.

Given all the testimony presented at trial, this court found that the evidence was sufficient to establish the crimes charged. For this reason, Appellant's first claim is without merit, and no relief is due.

-14-

*Sexually Violent Predator Designation*

Appellant's second and final issue on appeal is that this court erred in finding that Appellant is a sexually violent predator. For the reasons discussed below, this claim is also without merit, and no relief is due.

A finding that an individual is a sexually violent predator ("SVP") is based on statute, and is defined as follows:

> "Sexually violent predator." An individual determined to be a sexually violent predator under section 9795.4 (relating to assessments) prior to the effective date of this subchapter or an individual convicted of an offense specified in:
>
> (1) section 9799.14(b)(1), (2), (3), (4), (5), (6), (8), (9) or (10) (relating to sexual offenses and tier system) or an attempt, conspiracy or solicitation to commit any offense under section 9799.14(b)(1), (2), (3), (4), (5), (6), (8), (9) or (10);
>
> (2) section 9799.14(c)(1), (1.1), (1.2), (1.3),(2), (3), (4), (5) or (6) or an attempt, conspiracy or solicitation to commit an offense under section 9799.14(c)(1), (1.1), (1.2), (1.3),(2), (3), (4), (5) or (6); or
>
> (3) section 9799.14(d)(1), (2), (3), (4), (5), (6), (7), (8) or (9) or an attempt, conspiracy or solicitation to commit an offense under section 9799.14(d)(1), (2), (3), (4), (5), (6), (7), (8) or (9)
>
> who, on or after the effective date of this subchapter, is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses. The term includes an individual determined to be a sexually violent predator or similar designation where the determination occurred in another jurisdiction, a foreign country or by court martial following a judicial or administrative determination pursuant to a process similar to that under section 9799.24.

42 Pa.C.S.A. § 9799.12.

This assessment is done by a member of the Sexual Offenders Assessment Board ("the Board"), and takes into consideration a variety of factors before making a recommendation.

> (b) Assessment.--Upon receipt from the court of an order for an assessment, a member of the board as designated by the administrative officer of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. The board shall establish standards for evaluations and for evaluators conducting the assessments. An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:
    (i) Whether the offense involved multiple victims.
    (ii) Whether the individual exceeded the means necessary to achieve the offense.
    (iii) The nature of the sexual contact with the victim.
    (iv) Relationship of the individual to the victim.
    (v) Age of the victim.
    (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
    (vii) The mental capacity of the victim.
(2) Prior offense history, including:
    (i) The individual's prior criminal record.
    (ii) Whether the individual completed any prior sentences.
    (iii) Whether the individual participated in available programs for sexual offenders.
(3) Characteristics of the individual, including:
    (i) Age.
    (ii) Use of illegal drugs.
    (iii) Any mental illness, mental disability or mental abnormality.
    (iv) Behavioral characteristics that contribute to the individual's conduct.
(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24.

Appellant refused to be interviewed by the Board, so the evaluation, done by Dr. Barbara Ziv, was based upon police records and interviews, court records, and information from the Indicting Grand Jury. Sexual Offenders Assessment Board Evaluation of Rafael Valentine ("Evaluation"), 10/05/2014, at 1–2. Having reviewed all available evidence, Dr. Ziv determined that Appellant met the statutory criteria for designation as an SVP. *Id.* at 7. Prior to sentencing, this court agreed with Dr. Ziv's recommendation and found Appellant to be an SVP. N.T., 05/11/2015, at 12.

The standard for reviewing a sufficiency challenge to an SVP determination is well settled by Pennsylvania Courts:

- 16 -

We do not weigh the evidence presented to the sentencing court and do not make credibility determinations. Instead, we view all the evidence and its reasonable inferences in a light most favorable to the Commonwealth. We will disturb an SVP designation only if the Commonwealth did not present clear and convincing evidence to enable the court to find each element required by the SVP statutes.

*Commonwealth v. Feucht*, 955 A.2d 377, 382 (Pa. Super. 2008).

In order to designate an individual as an SVP, the Commonwealth must show 1) that he has been convicted of a qualifying sexually violent offense as set forth in the statute, and 2) that he has a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses. *Commonwealth v. Whanger*, 30 A.3d 1212, 1215 (Pa. Super. 2011) *citing Commonwealth v. Askew*, 907 A.2d 624 (Pa. Super. 2006).

In the instant case, Appellant was convicted of multiple offenses which qualify under 42 Pa.C.S.A. § 9799.12, *supra*. Among the offenses Appellant was found guilty of, 18 Pa.C.S.A. §§ 3123 (relating to involuntary deviate sexual intercourse), 3126 (relating to indecent assault), 6301 (relating to corruption of minors), and 6318 (relating to unlawful contact with a minor) are all sexual offenses which qualify an individual to be designated as an SVP. As Appellant was found guilty of multiple qualifying offenses, the first prong of the standard was certainly met.

The second prong requires a mental abnormality or personality disorder that would make predatory, sexually violent behavior more likely. The Evaluation prepared by Dr. Ziv found, based on all the evidence available to her, that Appellant met the criteria for pedophilic disorder. Evaluation at 5.

According to the DSM V, the essential features of Pedophilic Disorder are:

A. Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger). *[Appellant] sexually assaulted a prepubescent girl on multiple occasions.*

-17-

B. The individual has acted on these sexual urges, or the urges or fantasies caused marked distress or interpersonal difficulty. *[Appellant] acted on these sexual urges on an unwilling victim less than 13 years old.*

C. The individual is at least age 16 years and at least 5 years older than the child or children in Criterion A. *[Appellant] was in his 50s at the time of the assault.*

*Id.* at 6 (emphasis in original).

Dr. Ziv also found that Appellant's "deviant sexual interests" and diagnosis of pedophilia were generally associated with an increased risk of reoffending. *Id.* Specifically, Dr. Ziv found that:

In terms of mental health history, mental abnormality, mental disability, and other behavioral characteristics, [Appellant] has the following factors that are associated with increased recidivism risk: 1. Deviant Sexual Interest; 2. Multiple assaults upon a single victim.

*Id.* at 5.

Dr. Ziv further determined that Appellant's relationship with the victim and her family was maintained and fostered by Appellant even after his romantic relationship with the victim's grandmother ended, at least partially for the purpose of sexual victimization. *Id.* at 7. This was consistent with the statutory definition of "predatory" behavior, according to Dr. Ziv:

[Appellant] sexually assaulted his ex-girlfriend's granddaughter on many occasions. During the time he was assaulting the victim, [Appellant] was maintaining or promoting the relationship, at least in part, for the purpose of sexual victimization. It is the opinion of this examiner that [Appellant's] behavior during the Instant Offense does represent or correspond to the legal conception of 'predatory,' as defined in the Pennsylvania Statutes.

*Id.*

Although Appellant contends that he does not meet the criteria to be an SVP, he does not take into account the full range of factors considered by Dr. Ziv in evaluating sexual offenders. While it is true that Appellant has no prior criminal history, and there was no evidence presented of other acts of sexual abuse towards other children, these are not the sole factors used to

- 18 -

determine whether an individual should be designated an SVP. The nature of the contact with the victim, age of the victim and Appellant's relationship with her all contributed to Dr. Ziv's findings, as well. In the instant case, the victim was Appellant's step-granddaughter, and her mother treated Appellant as a member of the family. C.C. was approximately seven years old at the time of the abuse, which included anal penetration and forced oral intercourse. Appellant lived very close to the school victim attended, which allowed him to pick up C.C. and her sister and watch them after school. It was during this time, when Appellant was watching the girls after school, that he would sexually assault C.C. He also threatened both C.C. and her sister in order to hide the sexual abuse.

Given the recommendation of Dr. Ziv and the evidence presented at the hearing and at trial, this court found that the Commonwealth presented a clear and convincing case that Appellant should be designated as an SVP. For these reasons, this court agreed and found Appellant to be an SVP. For the foregoing reasons, Appellant's second and final claim on appeal is without merit, and no relief is due.

## Conclusion

In summary, this court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify the granting of Appellant's request for relief. For the reasons set forth above, the judgment of the trial court should be affirmed.

_____

J.