J-S39040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICARDO R. DESOUZA | : | |
| | : | |
| Appellant | : | No. 738 MDA 2023 |

Appeal from the Judgment of Sentence Entered March 2, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0003352-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RICARDO R. DESOUZA | : | |
| | : | No. 814 MDA 2023 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered March 2, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0003351-2020

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED: DECEMBER 7, 2023**

In these consolidated matters,[1] Ricardo Desouza (Appellant) appeals

*nunc pro tunc* from the March 2, 2022, judgments of sentence, entered in the

---

[1] The record reflects that Appellant filed a separate notice of appeal at each docket number.  Therefore, he complied with ***Commonwealth v. Walker***, 185 A.3d 969, 976 (Pa. 2018) (when a single order resolves issues arising on
*(Footnote Continued Next Page)*

Dauphin County Court of Common Pleas, after a jury convicted Appellant of sexual assault, terroristic threats, indecent assault, and simple assault.[2, 3] Appellant's convictions stem from two separate incidents that both occurred on the evening of August 17, 2020. The trial court imposed an aggregate sentence of 114 to 228 months' incarceration. On appeal, Appellant claims there was insufficient evidence supporting his convictions for sexual assault and indecent assault, the verdict was against the weight of the evidence, and the trial court abused its discretion by imposing consecutive sentences. Based on the following, we affirm.

**Statement of Facts**

As stated above, the underlying facts supporting Appellant's convictions stem from two distinct events involving separate victims that both took place

_____

more than one trial court docket, separate notices of appeal must be filed for each case), *overruled in part*, **Commonwealth v. Young**, 265 A.3d 462, 477 (Pa. Dec. 2021) (reaffirming that Pa.R.A.P. 341 requires separate notices of appeal when single order resolves issues under more than one docket, but holding Pa.R.A.P. 902 permits appellate court to consider appellant's request to remediate error when notice of appeal is timely filed); **see also** Pa.R.A.P. 902 (amended May 18, 2023).

This Court consolidated these appeals *sua sponte* on July 10, 2023. **See** Order, 7/10/23.

[2] The record contains various spellings of Appellant's first name as "Richardo," "Richard," and "Ricardo." The last spelling was used in the trial transcripts and criminal dockets; therefore, we will utilize it in our memorandum.

[3] 18 Pa.C.S. §§ 3124.1, 2701(a)(1), 3126 (a)(1), and 2701(a)(1), respectively.

on the evening of August 17, 2020. The trial court summarized the circumstances concerning Appellant's assault of his first victim, J.G., as follows:

> At trial, [J.G.] testified that on August 17, 2020, Appellant came to pick her up and the two drove around in Appellant's car. The two had an intimate relationship a year previous to the two meeting up again. After driving around and stopping to get an alcoholic beverage, the two got a hotel room [at the Red Roof Inn. J.G.] believed the two were going to eat pizza and watch a movie, and Appellant specifically told her that 'he wasn't gonna try anything.' Once in the room for a few hours, Appellant asked [J.G.] several times to get into the shower with him. At one point, . . . Appellant followed [J.G.] into the bathroom and began to kiss her neck. She continued to deny his advances and Appellant became annoyed and angry. Appellant told [J.G.] that if she was not going to get comfortable, he was going to leave. It was then that she took her pants off and laid on the bed.
>
> Appellant asked if he could put his mouth on [J.G.'s] vagina, to which she said no. However, Appellant pushed her panties down and put his mouth on her vagina. [J.G.] tried to push Appellant's head away and he eventually stopped. However, Appellant then took his penis out and beg[a]n trying to force it into her vagina. [J.G.] testified that after Appellant tried to force his penis into her vagina, and it hurt, he then pushed his penis into her [anus]. Appellant was on top of [J.G.] and his body weight held her down, while she tossed and turned to avoid . . . contact, he forced his penis into her 'anal part.' [J.G.] testified that the penetration lasted between [two] to [three] minutes and on a scale of pain from [one] to 10, was a 10. After Appellant removed his penis from [J.G.'s] 'anal part' he attempted to put his penis in her mouth; however, she pushed Appellant off of her sat up and put her pants on.

Trial Ct. Op. 5-6 (record citations omitted).

At that point, J.G., attempted to leave and called her cousin to pick her up from the Red Roof Inn, but Appellant grabbed the phone away from her. *See* Trial Ct. Op. at 6. Appellant then drove J.G. home. *Id.* Later that night,

- 3 -

J.G. was experiencing so much pain she went to the hospital to be examined.[4]

*Id.* There, she was interviewed by Detective Lee Tarasi of the Susquehanna Township Police Department. *Id.* J.G. stated that she never consented to oral, vaginal, or anal sex with Appellant. *Id.*

Shortly after the assault of J.G., Appellant asked his second victim, C.L., to meet him at the Red Roof Inn in the same room he had spent the earlier hours of the evening with J.G. Appellant and C.L. shared an "on again off again intimate relationship." Trial Ct. Op. at 6. The trial court described Appellant's assault of C.L. as follows:

> Appellant [asked C.L.] to meet up with him, which she did. . . . When Appellant let [C.L.] into the room, she sat on the edge of the bed and the two started talking. Appellant became angry and he approached [C.L.] and ripped shirt and bra off.
>
> Appellant also ripped a necklace off from [C.L.'s] neck and began calling her names. Appellant told [C.L.] to take her shorts off, which she did, and then pushed her panties to the side and put his penis inside of her vagina. [ ] Appellant then threw wooden hangers at [C.L.] and punched her in the nose. She took pictures of the injuries she sustained as the result of the hangers hitting her and Appellant punching her in the nose. She had injuries to her nose, eye, arms, hands and leg. While [C.L.] was at the sink trying to address her bleeding nose, Appellant walked up behind her and inserted his penis into her again; however, when she told him to stop, he did. [C.L.] testified that when she met Appellant at the hotel that evening, it was not her intent to have sex with him.

---

[4] Jessica Martin, a forensic nurse examiner, performed an examination of J.G. on August 18, 2020. *See* Trial Ct. Op. at 7. Nurse Martain indicated that "[w]hile [J.G.'s] physical examination did not reveal any acute injuries to the vagina or anus, . . . that was not uncommon in sexual assault cases." *Id.* at 8 (record citation omitted).

> [C.L.] left the hotel room in the morning and the two exchanged conversations back and forth over the following two weeks, including threats from Appellant. She eventually received a text from Appellant accusing her of going to the police regarding a sexual assault. She explained that she had not contacted the police, but about a week later, she reported the incident at the hotel.

*Id.* at 6-7 (record citations omitted).

Detective Kevin Scott of the Susquehanna Township Police Department testified and confirmed C.L. contacted the police department on August 29, 2020. *See* Trial Ct. Op. at 8. Given the amount of time that had passed since the assault, Detective Scott did not recommend that C.L. undergo an examination. *Id.* at 8-9.

### Procedural History

On September 22, 2020, a criminal complaint at CP-22-CR-0003351-2020 (Docket No. 3351) was filed charging Appellant with two counts of sexual assault, one count of terroristic threats, two counts of indecent assault, and one count of simple assault relating to the assault of C.L. On that same day, a criminal complaint at CP-22-CR-0003352-2020 (Docket No. 3352) was filed charging Appellant with three counts of sexual assault and one count of indecent assault, and one count of simple assault relating to the assault of J.G.

The matter proceeded to a two-day jury trial, which began on December 6, 2021. The jury heard testimony from both victims, J.G. and C.L., Detectives

Tarasi and Scott, and Nurse Martin. The jury convicted Appellant of all charges the following day.

On March 2, 2022, the trial court sentenced Appellant as follows. At Docket No. 3351, the court imposed two terms of 60 to 120 months' incarceration for both sexual assault convictions, and four terms of three to 24 months' incarceration for the terrorist threats, indecent assault, and simple assault convictions. All Docket No. 3351-2020 sentences were imposed to run concurrently with each other. At Docket No. 3352-2020, the court imposed three terms of 54 to 108 months' imprisonment for all three sexual assault convictions, and a term of three to 24 months' imprisonment for the indecent assault conviction. All Docket No. 3352-2020 sentences were imposed to run concurrently. The court then ordered that both dockets be served consecutively, which amounted to an aggregate term of 114 to 228 months' incarceration.[5]

On March 14, 2022, Appellant filed a post-sentence motion at both dockets, which the trial court denied 16 days later. Appellant originally filed a timely notice of appeal at Docket No. 3351, but it was withdrawn and discontinued at the request of Appellant's counsel.[6]

---

[5] Appellant was determined not to be a sexually violent predator.

[6] **See** Notice of Discontinuance of Action, 6/6/22.

On September 7, 2022, and October 20, 2022, Appellant filed separate *pro se* petitions under the Post-Conviction Relief Act (PCRA)[7] at each docket, and counsel was appointed by court order. On October 10, 2022, Appellant filed an amended PCRA petition at Docket No. 3351, raising one issue regarding the reinstatement of his post-sentence and direct appeal rights due to a purported miscommunication with his trial counsel. On January 19, 2023, the PCRA court entered an amended order, appointing counsel also at Docket No. 3352, noting the matters were consolidated, and providing that "[m]oving forward, the caption regarding [Appellant]'s PCRA filings shall include both docket numbers." Amended Order, 1/19/23. An evidentiary hearing was scheduled for March 7, 2023. However, on February 28, 2023, the Commonwealth filed a stipulation, indicating it would not object to the reinstatement of Appellant's post-sentencing and direct appeal rights. On March 2, 2023, the PCRA court cancelled the evidentiary hearing and reinstated Appellant's requested rights.

---

[7] 42 Pa.C.S. 9541-9546.

On March 11, 2023, Appellant filed post-sentence motions *nunc pro tunc*,[8] which the trial court denied April 27, 2023. These timely notices of appeal followed.[9,]

### Issues

Appellant presents the following issues for our review:

1. Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in denying Appellant's challenge to the sufficiency of the evidence presented at trial to sustain a conviction for sexual assault and indecent assault?

2. Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in denying Appellant's challenge to the weight of the evidence regarding Appellant's conviction for sexual assault and indecent assault?

3. Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in denying Appellant's request for reconsideration and/or modification of sentence to have the two dockets run concurrent rather than consecutive, as set forth in Appellant's [m]otion for [p]ost[-s]entence [r]elief?

Appellant's Brief at 5.[10]

### Analysis

_____

[8] In the motions, Appellant raised sufficiency, weight, discretionary aspects of sentencing challenges.

[9] The trial court directed Appellant to comply with Pa.R.A.P. 1925(b). Appellant timely filed his concise statement of errors complained of on appeal on June 12, 2023. The trial court issued its Pa.R.A.P. 1925(a) opinion on July 14, 2023.

[10] Based on the nature of Appellant's claims, we have reordered them for ease of disposition.

In his first issue on appeal, Appellant challenges the sufficiency of the evidence supporting both his sexual assault and indecent assault convictions. *See* Appellant's Brief at 15. Regarding his sexual assault convictions, Appellant applies the same argument to both victims, simply contending he did not engage in non-consensual intercourse. *See id.* at 16-17.

We review a challenge to the sufficiency of the evidence by the following standard:

> As a general matter, our standard of review [for a sufficiency claim] requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participating in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute out judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the . . . convictions will be upheld.

*Commonwealth v. Windslowe*, 158 A.3d 698, 708-09 (Pa. Super. 2017) (citation omitted).

Pursuant to 18 Pa.C.S. § 3124.1, a defendant commits the crime of sexual assault, a felony of the second degree, "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." Sexual intercourse is defined as follows: "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S. § 3101. Deviate sexual intercourse is defined as: "Sexual intercourse per os or per anus between human beings. . . . The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." *Id.*

Consent as a defense is defined, in relevant part, under the Pennsylvania Crimes Code, as follows: "The consent of the victim to conduct charged to constitute an offense or to the result thereof is a defense if such consent negatives an element of the offense or precludes the infliction of the harm or evil sought to be prevented by the law defining the offense." 18 Pa.C.S. § 311. Moreover, "[i]t is well established that resistance to sexual assault is not required to sustain a conviction." *Commonwealth v. Cramer*, 195 A.3d 594, 602 (Pa. Super. 2018) (citation & internal citation omitted). *See also* 18 Pa.C.S. § 3107 (resistance not required). Under Pennsylvania law, even "the uncorroborated testimony of a sexual assault victim, if believed by the trier of

fact, is sufficient to convict a defendant." ***Commonwealth v. Trippett***, 932 A.2d 188, 201 (Pa. Super. 2007) (citations omitted).

As for the first victim, J.G., the trial testimony reveals the following. J.G. testified that Appellant invited the victim to the hotel room where J.G. believed the two were going to "chill" and eat pizza. N.T., 12/6/21, at 109. Appellant told her he was not going to try anything. ***Id.*** Over the course of the evening, Appellant repeatedly asked J.G. to get into the shower with him. ***Id.*** at 114. He followed J.G. into the bathroom and began to kiss her neck and try to pull her pants down. ***Id.*** at 115. J.G. denied his advances and locked the bathroom door behind her. ***Id.*** Once J.G. left the bathroom, she took her pants off and laid them on the bed. ***Id.*** at 116. Appellant asked if he could perform oral sex on the victim, to which she said no, but despite her refusals he pushed her panties down and put his mouth on her vagina. ***Id.*** at 117-18. J.G. tried to push him away and he eventually stopped. ***Id.*** Appellant then tried to force his penis into J.G.'s vagina and ultimately pushed his penis into her anus. ***Id.*** at 120. Appellant was on top of J.G. holding her down with his bodyweight as he penetrated her for two to three minutes while J.G. "tossed and turned" in excruciating pain trying to avoid contact. ***Id.*** Lastly, Appellant attempted to put his penis in [J.G.'s] mouth. ***Id.***

J.G. testified that she never consented to any kind of sex with Appellant. N.T., 12/6/21, at 127-28. The Commonwealth introduced text message exchanges between Appellant and J.G. at trial, which corroborated J.G.'s

testimonial evidence. For example, after J.G. accused Appellant of rape, Appellant responded "Bitch bye you're weird." N.T. 12/7/21, at 264-65. He continued, "Bitch I didn't fuck you. I gave you head you was tryna put it in but you stop so I stop tf bitch you acting like I hold you down what the fuck. Rape tho get that from my name you weird bitch. You are ugly as fuck. How I rape you when I been already fuck smh you weird g shit." *Id.* at 265 (grammatical and spelling errors in original).

Jessica Martin, the forensic nurse examiner who performed the examination of J.G., testified that the fact that J.G.'s physical examination did not reveal acute injuries was not uncommon in sexual assault cases. N.T., 12/6/21, at 192-95.

Detective Tarasi's testimony regarding her investigation of the alleged assault also corroborated the events. *See* N.T., 12/7/21, at 250-52. Her investigation included watching hotel surveillance video of Appellant and J.G. entering their room and going through text exchanges between the two discussing the incident. *Id.* at 254, 260-66.

In finding there was sufficient evidence to support the convictions, the trial court explained its rationale as follows:

> [J.G.] testified that in the hotel room on the evening of August 17th Appellant performed oral sex on her and penetrated her vagina and anus with his penis, without her consent. While she tried to avoid his movements, Appellant's body weight on top of [J.G.] immobilized her. The text message exchange between she and Appellant following the incident corroborated the events of that evening.

- 12 -

Trial Ct. Op. at 9.

We conclude the evidence presented by the Commonwealth was more than sufficient to support the jury's guilty verdict on the charges of sexual assault in connection with J.G. J.G's testimony, as well as the corroborating evidence, established that even though she repeatedly rejected his sexual advances, Appellant forcibly engaged in sexual intercourse per os and anus without J.G.'s consent. **See Trippett**, 932 A.2d at 201. Accordingly, Appellant's convictions for sexual assault of J.G. are supported by the evidence and all the elements of the crime are met. **See Windslowe**, 158 A.3d at 708-09.

As for the second victim, C.L., evidence adduced at trial also demonstrated she also did not consent to sexual intercourse. C.L. testified that she met Appellant at the Red Roof Inn. N.T., 12/6/21, at 144. The two were sitting and talking on the edge of the bed when Appellant became angry because C.L. wanted to leave, and he ripped her shirt and bra off. **Id.** at 146. Appellant then ripped a necklace off from C.L.'s neck and called her names. **Id.** 147-48. Appellant told C.L. to remove her shorts and pushed her panties to the side as he pushed his penis inside of her vagina. **Id.** at 148-149. She testified she did not remember exactly what she said to him, but that she "was just hesitant." **Id.** at 148. Appellant punched her in the nose and threw wooden hangers at her. **Id.** at 149-50. When C.L. was cleaning up her bloody nose at the bathroom sink, Appellant came up behind and inserted his penis

inside her again. *Id.* at 155. Although C.L. did not immediately report the attack, she took pictures of the injuries she sustained that night. *Id.* at 151. The pictures were admitted at trial and showed that she had sustained injuries to her nose, eye, arms, hands, and leg. *Id.* at 152. C.L. left the hotel room that morning and the two continued to be in contact for the following two weeks. *Id.* at 158-59. Appellant threatened Appellant *via* text message, accusing her of going to the police to report on the sexual assault. *Id.* at 163. C.L. reported the assault about a week later. *Id.*

Detective Scott testified that the scene he processed on August 18, 2020, corroborated the alleged assault C.L. reported on August 30, 2020:

> Detective Scott photographed the room and described [it] as being in disarray, with broken hangers in the room and sheets and towels thrown about. He also described a pillow and other bed linens with what appeared to be blood clusters on them. As Detective Scott went through the contents of the trash can from the room, he found broken hangers, a torn woman's shirt and a torn gray bra. There was also a white undershirt found in the trash can with blood on it, and a towel that also has blood on it. There was also a white, long-sleeve shirt, size extra-small, found in the trash can.

Trial Op. at 8. As mentioned above, it was not recommended that C.L. undergo a physical examination given how much time had passed since the assault. *See* N.T., 12/6/21, at 227.

These circumstances *sub judice* are akin to those in *Cramer*, *supra*. There, the victim went to the defendant's apartment after meeting him in a bar. *Cramer*, 195 A.3d at 599. She was in the bathroom when the defendant

- 14 -

followed her in. *Id.* As the victim was washing her hands, the defendant "started penetrating her from behind." *Id.*

> Appellant did not stop until the Victim "turned around and told him that she didn't want to do this again and that I wasn't on the pill." Appellant then started kissing her again. Appellant wanted to have oral sex and the Victim "went along with it . . . ." She stopped giving him oral sex and told him "you don't want this. I don't want this. This is going to end badly for both of us." She then left the bathroom.

*Id.* (record citations omitted). The defendant was convicted of sexual assault pursuant to Section 3124.1. *Id.* at 601. On appeal, the defendant challenged the sufficiency of the evidence, claiming that the incident was consensual because the victim did not consent by physical resistance. *Id.* A panel of this Court rejected that argument, concluding there was sufficient evidence to support the conviction based on the trial court's findings, which included that "the jury obviously believed [the v]ictim's testimony that she did not consent to the sexual contact when she characterized the incident as rape." *Id.* at 602 (citation omitted). *See also Commonwealth v. Andrulewicz*, 911 A.2d 162, 166 (Pa. Super. 2006) ("the court[, sitting as fact-finder] was free to accept [the victim]'s characterization of what transpired with [defendant], particularly her representation that [defendant] "raped" her, which connotes a lack of consent to the act committed."). Similarly, here, the jury clearly believed the evidence that even though C.L. did not explicitly resist, she did not consent to sexual contact with Appellant based on the fact that she characterized the incident as an assault when reporting to police. N.T.,

- 15 -

6/7/22, at 224. Moreover, the jury heard the contents of certain text messages between the victim and Appellant, in which she stated, "You fuckin' and rapin' multiple bitches then forcing your shit in me. . . . Regardless of how our past is, this is fucked what you did to me." *Id.* at 229 (grammatical and spelling errors in original). Based on the totality of the circumstances, we conclude C.L.'s testimony and evidence from the investigation, including Appellant's use of force, support Appellant's convictions for sexual assault — Appellant penetrated C.L. per os and anus and she did not consent to engaging in sexual intercourse with Appellant. *See Trippett*, 932 A.2d at 201; *Windslowe*, 158 A.3d at 708-09.

For the same reasons discussed above, Appellant convictions for indecent assault are supported by the evidence. Appellant argues that the evidence was not sufficient to meet the elements of indecent assault because Appellant "did not cause" either of his victims "to come into contact with seminal fluid, urine, or feces for the purpose of" sexual arousal. *See* Appellant's Brief at 17-18.

Pursuant to 18 Pa.C.S. § 3126(a)(1), a person is guilty of indecent assault, in relevant part,

> if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> > (1) the person does so without the complainant's consent[.]

*Id.* Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

Based on the testimony reviewed by the jury and discussed above, we agree with the trial court that the evidence supported the indecent assault convictions. Contrary to his argument, the testimony established Appellant engaged in indecent contact with both victims for the purposes of arousing his own sexual desire and he did so without their consent. Accordingly, Appellant's sufficiency arguments fail.

In his next argument, Appellant contends the verdict was against the weight of the evidence presented at trial.[11] *See* Appellant's Brief at 19. Appellant asserts the testimony supports the notion that the "encounter[s]" were "consensual, and thus, not sexual assault and indecent assault as convicted." *Id.* at 19. Moreover, Appellant argues the fact that he and C.L. had a previous relationship and continued to be involved after the event belies his convictions. *Id.* at 19-20.

The standard by which we review challenges to the weight of the evidence is well-settled:

> The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is

___

[11] On March 11, 2023, Appellant properly preserved his weight claim in his post-sentence motion *nunc pro tunc* pursuant to Pa.R.Crim.P. 607.

not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the fact, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Williams*, 255 A.3d 565, 580 (Pa. Super. 2021) (citation omitted).

Here, the trial court found the verdict was not against the weight of the evidence because the victims' "credible testimony" supporting their accounts of the attacks was sufficient to support the challenged convictions. Trial Ct. Op. at 10.

Upon our review, we find no abuse of discretion of the trial court's ruling denying Appellant's weight of the evidence challenge. Appellant fails to explain how the court abused its discretion in denying his weight of the evidence claim. Rather, he asks us to reweigh certain evidence concerning C.L. in his favor, which we are not permitted to do. *See Williams*, 255 A.3d at 580. Thus, Appellant's weight claim fails.

In his final challenge, Appellant argues his consecutive sentences are excessive "in light of the conduct at issue." Appellant's Brief at 14 (citation omitted). Specifically, Appellant asserts the two assaults should constitute one event given the proximity of time in which they occurred, stating "[t]he

consecutive terms are based on events so close together in time and so intertwined by the facts of each case, that they constitute one event, rather than separate events." **Id.** 14. Additionally, Appellant notes his lack of criminal history prior to the time of trial as mitigating circumstances. **Id.** For these reasons, Appellant claims a substantial question was raised. **Id.** We disagree.

Appellant's argument qualifies as a challenge to the discretionary aspects of his sentence. **See Commonwealth v. Gonzalez–Dejusus**, 994 A.2d 595 (Pa. Super. 2010) (claim involving the imposition of consecutive sentences was excessive constituted discretionary aspects of sentencing claim). It is well established that such a challenge does not entitle an appellant to "review as of right." **Commonwealth v. Caldwell**, 117 A.3d 763, 768 (Pa. Super. 2015) (*en banc*) (citation omitted).

Rather,

[b]efore this Court can address such a discretionary challenge, an appellant must comply with the following requirements: An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Id.**

Appellant properly preserved his claim in a timely filed post-sentence motion *nunc pro tunc* before the trial court, and a timely notice of appeal before this Court. Additionally, his brief includes the requisite Pa.R.A.P. 2119(f) statement of reasons for allowance of appeal. ***See*** Appellant's Brief at 14.[12] We now must determine whether Appellant's claim presents a substantial question justifying our review.

An appellant "presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing code or is contrary to the fundamental norms of the sentencing process." ***Commonwealth v. Conte***, 198 A.3d 1169, 1174 (Pa. Super. 2018) (citation omitted).

> A court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question. Rather, the imposition of consecutive rather than concurrent sentences will present a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.
>
> To make it clear, a defendant **may** raise a substantial question where he receives consecutive sentences within the guideline ranges if the case involves circumstances where the application of the guidelines would be clearly unreasonable, resulting in an excessive sentence; however,

---

[12] Appellant sets forth a Rule 2119(f) statement, but does not include a separate section labeled such. Nonetheless, "we will not find that Appellant has not waived his discretionary sentencing claim based upon his lack of compliance with Rule 2119(f) as the Commonwealth did not object to Appellant's failure to adhere to the appellate rules." ***Commonwealth v. Kurtz***, 294 A.3d 509, 535 (Pa. Super. 2023).

a bald claim of excessiveness due to the consecutive nature
of a sentence will not raise a substantial question.

***Commonwealth v. Caldwell***, 117 A.3d 763, 769 (Pa. Super. 2015) (citations & quotation marks omitted; emphasis in original).

Generally, "[a] challenge to the imposition of consecutive rather than concurrent sentences does not present a substantial question regarding the discretionary aspects of sentence." ***Commonwealth v. Lloyd***, 878 A.2d 867 (Pa. Super 2005). "Thus, . . . the key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." ***Gonzalez-Dejusus***, 994 A.2d at 598–99 (Pa. Super. 2010).

Here, the trial court found the following:

[I]n sentencing Appellant, [the trial court] noted that while . . . Appellant had no prior record, nor was he deemed to be a sexually violent predator, the violent nature of the attacks on both women was a significant factor. [The trial court] also cited the trauma to [J.G. that she] continue[d] to experience . . . as a result of her assault. Here, because it was within the [trial court]'s discretion to run Appellant's sentences consecutive, and no substantial question regarding the discretionary aspects of the sentence have been raised, Appellant's argument lacks merits.

Trial Ct. Op. at 4.

We are in agreement with the trial court that Appellant did not raise a substantial question in light of his criminal conduct. While the crimes may have happened in one night, Appellant sexually and violently assaulted two separate victims. He left one victim with significant physical injuries following

the attack while the other victim continued to suffer emotionally months after the attack. Accordingly, we do not find Appellant has raised a substantial question for our review. *See Gonzalez-Dejusus*, 994 A.2d 595 at 599 (concluding no substantial question raised by imposition of consecutive sentences in light of criminal conduct, including "a 'crime spree' [involving] an armed robbery . . . a kidnapping . . . [and] a car theft.") (citation omitted).

Furthermore, to extent Appellant argues that the court failed to consider his individual circumstances, having neither a prior criminal record nor a history as a sexually violent predator, these allegations also do not amount to a substantial question. "An appellant's contention that the trial court did not adequately consider a mitigating circumstance when imposing sentence does not raise a substantial question sufficient to justify appellate review of the merits of such claim." *Commonwealth v. Ladamus*, 896 A.2d 592, 595 (Pa. Super. 2006) (citation omitted). *See also Commonwealth v. Disalvo*, 70 A.3d 900, 903 (Pa. Super 2013) ("[T]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review."). Based on the foregoing, we conclude that Appellant has failed to raise a substantial question that his sentence was excessive. Consequently, we need not address his final claim further.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/07/2023</u>